Argued October 5, reversed and remanded October 18, 1967

STATE ex rel NILSEN, *Appellant, v.* THE
OREGON STATE MOTOR ASSOCIA-
TION, *Respondent.*

432 P. 2d 512

G. *Dwyer Wilson*, Assistant Attorney General, Portland, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, Salem, and H. J. Belton Hamilton, Thomas N. Trotta, Dale W. Conn, Albert L. Menashe and Victor Levy, Assistant Attorneys General, Portland.

*Cleveland C. Cory*, Portland, argued the cause for respondent. With him on the brief were James P. Rogers and James W. Durham, Jr., Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

This is a wage collection case brought by plaintiff as assignee under the provisions of ORS 652.330.[①] Plaintiff appeals from the judgment entered in favor of defendant after the trial court sustained defend-

---

[①] ORS 652.330
  "The commissioner shall enforce ORS 652.310 to 652.410 and to that end he may:
  "(1)  *  *  *
  "(2) Take assignments of wage claims  *  *  *  in trust, for the assigning employes  *  *  *. The commissioner may sue employers on wage claims thus assigned  *  *  *.
  "(3)  *  *  *."

ant's demurrer to plaintiff's second amended complaint.

Plaintiff's assignor, hereinafter called the "employe," was employed by the defendant pursuant to a written employment contract. The complaint alleged that said employment contract provided for two weeks paid vacation annually for every 12 months worked by the employe; that the employe worked in excess of the 12 months specified; that the employe duly performed all conditions precedent on his part to be performed; and that defendant has paid the employe for all services rendered except for said two weeks vacation. Plaintiff seeks the pay for these two weeks vacation, plus statutory penalty and attorneys fees.

There is only one question presented by this appeal. Do the statutes authorizing plaintiff to collect unpaid "wage claims" include authority to collect unpaid vacation pay?

Enforcement of wage claims by plaintiff is covered by ORS 652.310 to ORS 652.410. The word "wages" is not defined as such in these statutes. It is defined indirectly, however. ORS 652.320(7) provides:

" 'Wage claim' means an employe's claim against his employer *for compensation for his own personal services.*" (Emphasis supplied.)

The problem arises in this case because in the wage collection statute the payment section[2] speaks of

---

[2] ORS 652.140

"(1) Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, *all wages* earned and unpaid at the time of such discharge shall become due and payable immediately * * *. (Emphasis supplied.)

"(2)  * * *

"(3)  * * *."

"wages," whereas the penalty section[®] speaks of "wages or compensation."

■■ We construe "wages" to mean *all* earned compensation contracted to be paid by the employer for the employe's personal service regardless of the nature of such compensation. If the employment contract made the granting or withholding of a paid vacation discretionary with the employer it could be argued that vacation pay would be a gift or gratuity rather than quid pro quo for personal services. We held in *Harryman v. Roseburg Fire Dist.*, 244 Or 631, 420 P2d 51 (1966), that an employe's sick leave was not a mere gratuity. Where the employe was told at the time of hiring that he was entitled to an allowance for his accumulated sick leave upon termination, this was held to become a contractual term of employe's employment and a part of his compensation for services. In the instant case the written employment contract expressly creates the enforceable right to a vacation upon the contract terms being met by the employe. No discretion is vested in the employer to withhold the vacation provided the employe meets the contract terms for eligibility. To earn this right the employe is required to perform personal service. The vacation is given in exchange for this personal service.

---

[®] ORS 652.150

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the *wages or compensation* of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the *wages or compensation* at the time they accrued." (Emphasis supplied.)

■ We feel that the rules of statutory construction require the interpretation we have placed on this statute. Defendant argues that the word "compensation" used in both the penalty statute and the statute defining "wage claim," should not be deemed to broaden the word "wages." Defendant contends that "wages" and "compensation" are used interchangeably in the statute and that the statute should be strictly construed, because when the statute was originally passed it was not customary for the nonsalaried employe, i.e., "wage" earner, to receive paid vacation. This argument is not persuasive. In the absence of a clear intent the language of a statute can not be considered frozen in the context which exists at the time of its passage. As Sutherland states:

> "Standards established by the medium of legislation are usually intended to have considerable breadth with the result that a statute may cover many situations that do not immediately occur to the mind. And so it is a general rule of statutory construction that a statute, expressed in general terms * * * will be applied, not only to situations existing and known at the time of the enactment, but also prospectively to things and conditions that come into existence thereafter. Legislation must be given elastic operation if it is to cope with changing economic and social conditions * * * . * * * [This] rule * * * has been employed in the construction of penal as well as remedial statutes." 2 Sutherland, Statutory Construction (3d ed 1943) 509-510.

■ In construing a statute, words of common use are to be taken in their natural and obvious meaning and significance. That sense of the words is to be adopted which best harmonizes with the context and promotes the policy and objectives of the legislation.

*Superior Oil Syndicate v. Handley,* 99 Or 146, 195 P 159 (1921). As commonly understood, the term "wages" as well as the term "compensation" includes vacation pay. This construction best harmonizes with the policies and objectives of the legislation.

■ The policy of the statute is to aid an employe in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employe from promptly collecting his agreed compensation. This policy is just as applicable to an unpaid vacation claim as to an unpaid hourly compensation claim. Vacation pay, in addition to being an inducement to accept employment and promote increased tenure, is intended to sustain the employe during the vacation period. The smaller the amount of the unpaid compensation the greater is the need for assistance in effecting collection. The policy of the statute is analogous to the policy underlying ORS 20.080, which allows the collection of attorneys fees in certain small tort claims.

Defendant further contends that the statute should be strictly construed because it contains a penalty provision. Defendant cites authority from New York, Illinois and Missouri.

Criminal penalties are attached to both the New York and Illinois wage payment acts. New York Labor Law § 196(2) (McKinney 1965), and Ill Rev Stat 1959, ch 48, § 39g-39m (Smith-Hurd 1950). The wilful refusal of an employer to pay his employe's wages is a misdemeanor in both states, punishable by a fine or imprisonment in New York (New York Penal Law § 1272 (McKinney 1944)) and by a fine in Illinois. Ill Rev Stat 1959, ch 48 § 39k. The New York court,

in construing its statute, laid great stress upon the fact that a criminal penalty was imposed, stating: "* * * The courts may not by forced construction create a crime," and "* * * The liberal interpretation placed upon it [the word 'wages'] in actions involving civil remedies of employees does not apply to the word as used in a criminal statute * * *." *People v. Vetri,* 309 NY 401, 406, 407, 131 NE2d 568 (1955).

The Missouri statute (Mo Rev Stat Ann § 290.090, 290.110 (Vernon 1965)) prescribes a civil penalty and is thus more analogous to the Oregon statute. However, the 1959 version of the statute, pursuant to which *Monterosso v. St. Louis Globe-Democrat Publishing Co.,* 368 SW2d 481 (Mo), cert. denied 375 US 908, 84 S Ct 198, 11 L Ed2d 147 (1963), was decided, prescribed a very harsh civil remedy. That decision is explained in Comment, Labor Law—Vacation Pay Liability After Termination of Employment, 29 Mo L Rev 193, 198-199 (1964), as follows:

> "At the time of the Monterosso decision, the * * * statute was so worded that a discharged employee could bring his action to recover a claimed unpaid wage within 60 days from the date of discharge and cause the daily penalty to continue to accrue all during the pendency of the litigation. Employers have been assessed penalties as high as $5,690.38 for failure to pay on request a mere $59.45 wage claim * * *."

The author concludes that the severity of the penalty as then worded probably accounts for the fact that the court strictly construed the term "wages." Insofar as applicable to the instant case, we are not disposed to follow the cases interpreting criminal statutes, nor do we feel that the Missouri statute is sufficiently

comparable to be of help in construing the Oregon statute.

Clearly, in the instant case, vacation pay, when earned pursuant to the employment contract, would be compensation for the employe's personal services. As such, plaintiff would have authority under ORS 652.330 to undertake collection.

Reversed and remanded.