Argued November 7, 1977, affirmed February 8, 1978.

LAMY, *Appellant/Cross Respondent,*

*v.*

JACK JARVIS & COMPANY, INC.,
*Respondent/Cross Appellant.*

(No. 417-935, SC 24771)

574 P2d 1107

Richard H. Williams, Portland, argued the cause for appellant/cross respondent. With him on the briefs were Dezendorf, Spears, Lubersky & Campbell, O. Meredith Wilson, Jr. and Laurence F. Janssen, Portland.

Barnes H. Ellis, Portland, argued the cause for respondent/cross appellant. With him on the briefs were Constance Canfield Jarvis and Davies, Biggs, Strayer, Stoel & Boley, Portland.

Before Denecke, Chief Justice, Bryson and Lent, Justices and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

[ 308 ]

**GILLETTE, J.,** Pro Tempore.

This is an appeal by the plaintiff from a judgment entered after a trial to the court. In its findings of fact and conclusions of law, the trial court found that defendant owed plaintiff $163.68 and that plaintiff owed defendant $273.38 under a counterclaim. The judgment entered by the trial court offset the plaintiff's recovery, dismissed the complaint and awarded defendant $109.70. Plaintiff appeals, contending that he was entitled to certain statutory penalties which the trial court denied. Defendant cross-appeals, claiming the court should have awarded a further counterclaim. We affirm.

The principal issue is whether work performed by plaintiff on May 1 and 2, 1975, was work performed as an "employee" or as a corporate shareholder. If plaintiff worked as an employee, then he is entitled to unpaid wages and — if the wages were wilfully withheld — penalties and attorneys' fees as well. ORS 652.140,[1] 652.150,[2] and 652.200.[3]

---

[1] "ORS 652.140.

"(1) Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge shall become due and payable immediately; * * *

"(2) When any such employe, not having a contract for a definite period, shall quit his employment, all eages earned and unpaid at the time of such quitting shall become due and payable immediately if such employe has given not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of his intention to quit his employment. If such notice is not given, such wages shall be due and payable 48 hours, excluding Saturdays, Sundays and holidays, after such employe has so quit his employment."

[2] "ORS 652.150. If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his

The facts, in the main, are undisputed. The defendant is an Oregon corporation which does market studies and other financial consulting work for real estate owners and developers. Plaintiff was first employed as a vice-president of the corporation in April, 1973. In January, 1974, plaintiff became a 40%[4] shareholder, with the remaining shares owned by Mr. and Mrs. Jarvis (who served as president and secretary-treasurer of the firm respectively). The parties signed a Shareholders Agreement which in pertinent part provided:

"In the event of withdrawal by any shareholder, he agrees to satisfactorily complete all existing assignments for which he has been given budget responsibility. In the event he fails to complete any such assignment, he shall be liable to Jack Jarvis and Company, Inc. for all sums expended by the Company to satisfactorily complete said project."

In late April, 1975, plaintiff decided to leave the firm. The three shareholders met on May 1, 1975, to determine the price plaintiff would be paid for his shares and agreed on a tentative purchase price based on the book value of shares for the month of April. The parties agreed, however, that the tentative accounting was subject to readjustment at a future date according to the subsequent handling of the accounts receivable and payable for the month of April.

financial inability to pay the wages or compensation at the time they accrued."

[3] "ORS 652.200.

"* * * * *

"(2) In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney's fees for prosecuting said action, unless it appears that the employe has wilfully violated his contract of employment."

[4] Plaintiff was a 30% shareholder at the time of his resignation in April, 1975.

At the time of plaintiff's resignation, defendant corporation was engaged in a significant client project — the "Tom Louie job" — for which the computer programming work that plaintiff had been doing was very important. Plaintiff agreed to work May 1 and 2 to complete the computer project and defendant promised to pay him at the same rate of compensation drawn for the preceding months, which computed to $10.63 per hour. Plaintiff worked the two days as promised and believed he had completed the project when he left the firm on May 2. Unfortunately, however, errors in the program rendered it unsuitable and another computer analyst was brought in to correct and complete the program at a cost to defendant of $216.00.

As of mid-June, 1975, the status of accounts payable and accounts receivable had been determined. Accordingly, Mrs. Jarvis wrote plaintiff a letter setting out the final accounting of the stock purchase prices, itemizing the accounts, crediting plaintiff for the two days of work at $163.68 and offsetting that against the $216.00 spent on correcting the computer program. Plaintiff refused to pay the adjusted balance and instead brought suit, seeking to recover unpaid wages of $163.68 plus penalty wages and attorneys' fees as provided by statute. Defendant counterclaimed for the amount owing on the final June accounting of the stock purchase price, and for money allegedly spent on correcting the computer program.

The trial court found that the defendant owed plaintiff $163.68 as compensation for work performed on May 1 and 2, 1975. The court also found that the plaintiff worked on those days to fulfill his duty under the Shareholders Agreement and concluded that the work was performed as a co-partner and not as an employee, and that, accordingly, plaintiff was not entitled to penalty wages or attorneys' fees.

With regard to defendant's counterclaims, the court found that the plaintiff owed the defendant $57.38 on

the accounting for the value of his shares and $216 expended by the defendant to finish work not completed by the plaintiff. The trial court did not award any part of the additional damages claimed by defendant.

## ASSIGNMENTS OF ERROR

■ Plaintiff assigns as error the trial court's determination that plaintiff worked on May 1 and 2 as a co-partner and not as an employee. The trial court's first conclusion of law stated:

> "Work performed by plaintiff on the dates of May 1 and 2, 1975, was not as an employee of defendant as that term is defined in ORS 652.210 (2), but as a co-partner performing in accordance with the Shareholders Agreement * * *."

We think the trial court was correct in its conclusion that plaintiff was not working on May 1 and 2 as an employee, although the statute the court cited was inapplicable. Employee is defined in ORS 652.210 (2) as:

> "* * * any individual who, otherwise than as a co-partner of the employer or as an independent contractor, renders personal services to an employer who pays or agrees to pay such individual at a fixed rate."

This definition of "employee" by its own terms applies to ORS 652.210 and 652.230, those statutes dealing with wage discrimination cases. "Employee" is identically defined in ORS 652.310(2), which applies to ORS 652.310-652.410, those statutes dealing with enforcement of wage claims by the Labor Commissioner. The statutes under which plaintiff seeks relief and for which he must qualify as an "employee" are ORS 652.140, 652.150 and 652.200(2). We are unable to find any applicable statutory definition of "employee" for purposes of those sections.

The case law is not very helpful, either. The question is said to be one of fact, *Nordling v. Johnston,* 205 Or 315, 283 P2d 994, 287 P2d 420, 48 ALR2d 1369 (1955), except that it is a question of law where the

essential facts are not in dispute, *Jenkins v. AAA Heating,* 245 Or 382, 421 P2d 971 (1966). *See also Wallowa Valley Stages v. Oregonian,* 235 Or 594, 386 P2d 430 (1963). Most of the cases, such as those cited above, have dealt with the "servant/independent contractor" dichotomy, rather than the "employer/partner" question. We have said, however, that,

> "* * * In cases brought under such legislation, the purposes behind the particular statute are given primary consideration * * *" *Id.,* at 597.

Turning to the statutes, we find their central purpose to be that of assuring that one who works in a master and servant relationship, usually with a disparity of economic power existing between himself and his superior, shall be assured of prompt payment for his labors when the relationship is terminated. One who works as a partner — who shares the risks of a venture — is not in this position. Thus, while it is not controlling as a matter of statutory construction, we nonetheless find the distinction between employees and co-partners in ORS 652.210(2) and 652.310(2) valid for the purposes of this case, and we adopt it.[5]

Under this definition, plaintiff was working on May 1 and 2 as a co-partner and not as an employee. Both parties have analyzed this question by reviewing plaintiff's status *prior* to May 1 and 2, 1975. We agree with that approach. The work performed by plaintiff in May was a continuation of work he had been doing. His obligation to perform the work had arisen earlier. We therefore turn to an examination of plaintiff's status prior to May 1, 1975.

---

[5] *Compare Hekker v. Sabre Construction Co.,* 265 Or 552, 556-57, 510 P2d 347 (1973), where we stated that the definitions of "wages" in ORS 652.210 and 652.320 are of "no direct assistance" in determining the meaning of wages as used in ORS 652.200(2), the attorney's fees section, because the definitions were each part of separate statutory schemes enacted at different times and for different purposes. Actually, one section did not even directly define "wages." Here, however, the definitions of "employee" are identical in the two sections, and their scope appears to us to be consistent with the thrust of the statutes we are construing.

■■ Plaintiff argues that he worked as an employee for defendant corporation up until April 30, 1975, and that his status did not materially change on May 1 and 2. We disagree. Plaintiff was a 30% shareholder in a "Subchapter S" corporation. *See* Int. Rev. Code, § 1371 et seq. When plaintiff signed the Shareholders Agreement in January, 1974, he became a participant in the venture along with Mr. and Mrs. Jarvis, with the right to share in profits as well as losses of the corporation. A sharing of profits and losses is one of the key elements of a partnership. *Hayes v. Killinger,* 235 Or 465, 385 P2d 747 (1963). Furthermore, plaintiff worked without supervision by Mr. Jarvis. This would not have been the case had plaintiff been merely an employee. Prior to May 1 and 2, plaintiff was a co-partner, not an employee. His work on May 1 and 2 arose out of his status as a co-partner as reflected in the Shareholders Agreement. Plaintiff was not an employee on May 1 and 2.

■ 2. Plaintiff next assigns as error the trial court's refusal to receive into evidence an employment agreement entered into by plaintiff and defendant on April 25, 1973. This agreement dealt with the relationship of the parties before plaintiff became a shareholder. Plaintiff argues that because the 1973 employment agreement contained the same clause as the 1974 Shareholders Agreement, obligating an employee to complete assignments for which he had budget responsibility before leaving the firm, the 1973 agreement was relevant to show the origin of that obligation. Plaintiff offered the agreement to raise an inference that plaintiff was still an employee after January 1, 1974, even though the Shareholders Agreement had gone into effect. We think that the nature of plaintiff's relationship to the company, as outlined above, was too clearly that of a co-partner to be overcome by evidence of the earlier agreement. The trial court therefore did not err in refusing to receive it.

■ 3. Defendant cross appeals and assigns as error the trial court's refusal to receive in evidence the time

records of Jack Jarvis, which entries account for the time Jarvis claims to have personally incurred in attempting to make plaintiff's computer program workable for the Tom Louie job. In its second counterclaim defendant had sought damages for the cost of completing plaintiff's computer project, requesting $216.00, the amount paid to the outside computer analyst to correct the program, and $1,960.00 which represents the value of the amount of time Mr. Jarvis expended working on the computer program.

The Shareholders Agreement provided that upon leaving the company, a shareholder who fails to complete assignments for which he was responsible,

> "shall be liable to Jack Jarvis and Company, Inc. for all sums expended by the company to satisfactorily complete said project."

The record shows that the corporation did not pay Mr. Jarvis any sums in addition to his normal monthly rate of compensation for his time spent working on the computer program. There was no separate, identifiable "sum expended by the company to Mr. Jarvis." The Shareholders Agreement stipulates the measure of damages and it was not error for the trial court to refuse evidence of an additional theory of damages.

Affirmed.