Argued and submitted October 15, 1993, affirmed February 22, 1995

In the Matter of the Compensation of
Erwin L. Farmen, Claimant.

**WELLIVER WELDING WORKS**
and Liberty Northwest Insurance Corporation,
*Petitioners,*

*v.*

Erwin L. FARMEN,
*Respondent.*

(92-01495, 92-01494; CA A79302)

890 P2d 429

Kevin L. Mannix argued the cause and filed the brief for petitioners.

Arthur Klosterman argued the cause for respondent. With him on the brief was Whitehead & Klosterman.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

**LANDAU, J.**

Employer seeks review of an order of the Workers' Compensation Board that directed employer to provide vocational assistance. We affirm.

The facts are not in dispute. In 1986, claimant worked as a welder for approximately $425 per week. That same year, he compensably injured his back. Employer accepted his claim and closed it, with no award of permanent disability. Claimant was not entitled to vocational assistance at that time. Claimant returned to work as a welder with another employer.

Sometime around 1988, claimant quit his work as a welder, and became employed as an apartment manager at a "minimal wage." While working at the new job, his prior back injury worsened. Employer accepted his aggravation claim, and in 1991, he was awarded 34 percent unscheduled permanent disability. His aggravated back condition left him able to perform only sedentary to light work. He returned to work as an apartment manager, on a part-time basis.

Claimant filed a claim for vocational assistance. Employer denied the claim. Claimant sought administrative review, and the Director of the Department of Insurance and Finance[1] upheld the denial. In his order, the director explained that only those unable to return to "suitable employment" are eligible for vocational assistance. According to the director, OAR 436-120-005(6)(a) defines "suitable employment" as employment at a wage within 20 percent of what claimant received for his or her "regular employment," which is, in turn, defined as the claimant's employment "at the time of the injury or the claim for aggravation, whichever gave rise to the eligibility for vocational assistance * * *." The director concluded that, because claimant was capable of employment at a wage within 20 percent of his minimal wage for apartment management, which was his employment at the time of his claim for aggravation, he was not eligible for vocational assistance.

---

[1] The department has since been renamed the Department of Consumer and Business Services. ORS 705.105.

Claimant requested a hearing, arguing that he is eligible for vocational assistance because he is currently incapable of employment at a wage within 20 percent of his wage of four years earlier, when he was injured as a higher-paid welder. The referee agreed and set aside the director's order, concluding that the rule on which the director's decision was based, OAR 436-120-005(6)(b), is invalid. The referee explained that the rule conflicts with ORS 656.340(5), which provides that the objective of vocational assistance is to return the worker to employment at a wage as close as possible to the worker's wage "at the time of injury." The referee construed that statutory reference to mean the time of the *original* injury, not the time of aggravation. The Board affirmed on the same basis.

On review, employer contends that the Board erred in concluding that OAR 436-120-005(6)(b) is invalid. Employer argues that, because it is the claim for aggravation that gave rise to claimant's request for vocational assistance, his employment at that time must be the basis for determining his eligibility. Claimant argues that the Board correctly determined that OAR 436-120-005(6)(b) impermissibly departs from the plain language of the statute.

We review the Board's conclusion for errors of law. ORS 656.298(6); ORS 183.482(7) and (8); *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 202, 205, 752 P2d 312 (1988).

A worker becomes eligible for vocational assistance

"if the worker will not be able to return to the previous employment or to any other available and suitable employment with the employer at the time of injury, and the worker has a substantial handicap to employment." ORS 656.340-(6)(a).

"Suitable employment," in turn, is defined, in part, as:

"Employment that produces a wage within 20 percent of that currently being paid for employment which was the worker's regular employment." ORS 656.340(6)(b)(B)(iii).

Thus, assuming compliance with other relevant statutory requirements, if a worker's injury renders him or her incapable of employment at a wage within 20 percent of the wage for the worker's "regular employment," the worker is eligible for

vocational assistance. Unfortunately, the statute does not define "regular employment."

The director promulgated OAR 436-120-005(6)(b) to define the term "regular employment" as:

"employment of the kind the worker held at the time of the injury or the claim for aggravation, whichever gave rise to the eligibility for vocational assistance; or, the worker's customary employment."

The issue in this case is whether the Board correctly determined that the director's rule defining "regular employment" is invalid.

In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980), the Supreme Court said that the analysis of the validity of an agency rule that construes a statute depends on which of three categories of statutory terms is involved:

"1.) Terms of precise meaning, whether of common or technical parlance, requiring only factfinding by the agency and judicial review for substantial evidence;

"2.) Inexact terms which require agency interpretation and judicial review for consistency with legislative policy; and

"3.) Terms of delegation which require legislative policy determination by the agency and judicial review of whether that policy is within the delegation."

In this case, the term "regular employment" is an inexact term. Accordingly, our role is to determine whether the agency erroneously interpreted a provision of law. 290 Or at 234; ORS 183.982(8)(a); *see also SAIF v. Allen*, 320 Or 192, 209, 881 P2d 773 (1994); *England v. Thunderbird*, 315 Or 633, 638, 848 P2d 100 (1993).

We begin with the text and context of the statute, which includes other provisions of the same statute as well as other related statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We also consider, at this first level of analysis, rules of construction that bear directly on the interpretation of the text and context. 317 Or at 611. As we have noted, the legislature did not define "regular employment." However, from the context and from various rules of construction, it becomes apparent

that the director's definition of the term does not comport with what the legislature intended.

The term "regular employment" is used in the statute to define "suitable employment *with the employer at the time of the injury* * * *." ORS 656.340(6)(a). (Emphasis supplied.) Similarly, ORS 656.340(5) provides that the purpose of vocational assistance is to return the worker to employment at a wage as close as possible to the worker's wage "at the time of injury." In both cases, the statute does not say "at the time of injury or the claim for aggravation," as does the director's rule.

It seems unlikely that the legislature would have chosen "at the time of injury" to refer to the time of a claim for aggravation. Employer refers to no place in the statutes at which the legislature ever has referred to a claim for a worsened compensable condition as an "injury." To the contrary, the statutory provisions concerning claims for aggravation draw a distinction between a "worsened condition" that gives rise to the aggravation claim and the original "injury." *See* ORS 656.273. Under the aggravation statute, in fact, there need only be a worsening of the original compensable condition, the material contributing cause of which is the original injury. ORS 656.273(1); *see Jocelyn v. Wampler Werth Farms*, 132 Or App 165, 173-74, 888 P2d 55 (1994).

■    Accordingly, to construe "at the time of injury" to include the time of a claim for aggravation imbues the term "injury" with a meaning that is contrary to common sense. We are generally constrained to assume that the legislature intended the words of a statute to be given their common, ordinary meaning unless there is a clear indication that some other meaning was intended. *Griffin v. Tri-Met*, 318 Or 500, 508, 870 P2d 808 (1994); *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611.

Employer argues that language in ORS 656.340(4) supports the director's definition. That section provides that a worker who has been determined to be ineligible for vocational assistance "may not be found eligible thereafter unless * * * the worker's condition worsens substantially." According to employer, because that language recognizes that a worker's claim for vocational assistance may arise out of a

worsening of a compensable injury, the director's rule makes sense in defining "regular employment" as the employment at the time of the worsening of the condition.

Employer misses the point, which is what the legislature meant by defining eligibility by reference to the worker's employment "at the time of injury." That a compensable worsening may give rise to a claim for vocational assistance does not resolve what the legislature intended by determining eligibility by reference to a worker's wages "at the time of injury." Indeed, to accept employer's argument would leave us with the problem of defining the term "injury" to include "compensable worsening," which, as we have suggested, is inconsistent with the manner in which that term is commonly understood and used elsewhere in the statutes.

We conclude that the text and the context strongly suggest that the legislature intended "regular employment" to refer to a worker's employment at the time of the injury, not at the time of a subsequent claim for aggravation. Nevertheless, we cannot say that the matter is completely free from doubt. *See To v. State Farm Mutual Ins.*, 319 Or 93, 101, 873 P2d 1072 (1994). Accordingly, we proceed to an examination of the legislative history. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12.

The parties have cited no legislative history that reveal a discussion of the matter directly at issue, and we are aware of none. However, there are several passing references to eligibility in terms of a percentage of the worker's wage "at the time of injury." The focus of those discussions was the legislature's attempt to provide vocational assistance to workers who can find minimum wage work but had previously been and, but for the compensable condition, could still be earning more than that. Tape Recording, Senate Labor Committee, June 9, 1987, Tape 206, Side A at 70. Those references support our initial conclusions about the statute; indeed, they seem quite close to the facts of this case, in which claimant is apparently capable of earning a minimum wage, but not the wage he was earning before his back injury.

There also is a colloquy between the chair of the Senate Labor Committee, which considered the amendments that became ORS 656.340, and one of the committee members:

"[Senator Otto:] 80 percent at the time of injury or 80 percent at the time of settlement of the claim?

"[Chairman Hill:] This would be the regular employment at the time of injury.

"[Senator Otto:] At the time of injury?

"[Chairman Hill:] Yes—that's the definition of the regular employment.

"[Senator Otto:] I'm thinking of pay raises or pay reductions.

"[Chairman Hill:] Currently being paid for the regular employment. * * * If the worker takes a light-duty job and goes back to the employer and takes a light-duty job making $5 per hour and their regular job was $10, when determination is made about available and suitable employment and eligibility for vocational assistance and it would be looking at the wage to the job that they had left when they were injured. So it would be the millworker job, not the light-duty job." Tape Recording, Senate Labor Committee, June 9, 1987, Tape 206, Side A at 129.

The discussion is not precisely on point. But, once again, it bears out our conclusion that the legislature placed emphasis on the "time of injury," and not some later event, as the reference point for defining the worker's "regular employment." Still, because we cannot fairly say that the legislative history clearly disposes of the matter, we proceed to an application of other general maxims of statutory construction to aid us in resolving any remaining uncertainties. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 612.

■    One such maxim is that we attempt to construe the language of the statute in a manner consistent with its purposes. *Bartz v. State of Oregon*, 314 Or 353, 358, 839 P2d 217 (1992). The Supreme Court has said that a purpose of workers' compensation benefits is to compensate workers

"who are active in the labor market, for wages lost *because of inability (or reduced capacity) to work as a result of a compensable injury.*" *Cutright v. Weyerhaeuser Co.*, 299 Or 290, 296, 702 P2d 403 (1985). (Emphasis supplied.)

A worker's inability or reduced capacity to work may result from a worsening of a compensable injury, *i.e.*, an aggravation. However, that aggravation does not exist in a vacuum. It is defined by statute as a compensable worsening of an

original injury. ORS 656.273. Without the injury, there is no worsened condition that renders the worker unable to work. Accordingly, if a purpose of the statutes is to provide benefits to workers who are incapable of working "as a result of a compensable injury," then it is more likely that the legislature intended a worker's eligibility for vocational assistance to be predicated on the wage at the worker's "regular employment" at the time of the injury, not at the time of a later claim for a worsening of the condition caused by that injury.

■    We conclude that, taking into consideration the text and context of the statute, the history of the legislation and relevant rules of construction, it is evident that the legislature intended "regular employment" within the meaning of ORS 656.340(6) to mean the worker's employment at the time of the injury, not at the time of a claim for aggravation. Accordingly, the Board was correct in holding that the director's rule conflicts with the statute and is invalid.

Affirmed.