Argued and submitted July 10, 1998; resubmitted En Banc June 9, affirmed
October 27, 1999

Michelle M. WYATT,
*Respondent,*

*v.*

BODY IMAGING, P.C.,
an Oregon professional corporation,
*Appellant.*

(96C-865706; CA A97508)

989 P2d 36

William N. Mehlhaf argued the cause for appellant. With him on the brief were Leslie S. Johnson and Markowitz, Herbold, Gade & Mehlhaf, P.C.

Maureen Leonard argued the cause for respondent. With her on the brief was Charles Robinowitz.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler and Brewer, Judges.

WOLLHEIM, J.

Landau, J., concurring in part, dissenting in part.

## WOLLHEIM, J.

Plaintiff initiated this action for unpaid wages under ORS 652.140 *et seq.* (the Wage Claim Act), alleging that defendant failed to pay her $242.10 within 48 hours of her resignation date. After a bench trial, the trial court found that defendant willfully failed to pay plaintiff wages within the period of time required by law. The court awarded a statutory penalty and attorney fees. On appeal, defendant asserts that the trial court's judgment is erroneous in three respects. First, it argues that the trial court erred in awarding the statutory penalty, because the $242.10 represented amounts withheld from plaintiff's pay for dependent health insurance benefits and were not "wages" within the meaning of the statute. Second, defendant argues that the trial court erred in awarding the statutory penalty, because there is no evidence that defendant acted willfully. Third, defendant argues that the trial court erred in awarding attorney fees. According to defendant, because it had paid the $242.10 before plaintiff commenced this action, the action cannot be regarded as one for the "collection of wages" within the meaning of the relevant statute. We conclude that the trial court did not err in awarding penalties against defendant or in awarding attorney fees to plaintiff and accordingly affirm.

We state the facts in the light most favorable to plaintiff, who prevailed at trial. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). Plaintiff worked for defendant as its collections and office manager. As an employment benefit, defendant provided plaintiff with health insurance through QualMed. Defendant permitted plaintiff to purchase insurance for her daughter. She paid for that insurance by having $48.42 deducted from her paycheck every two weeks.

In July 1995, defendant disputed the accuracy of QualMed's premium billings. In August, defendant stopped paying premiums. On September 18, 1995, having received no premium payments since July, QualMed canceled defendant's health insurance coverage effective July 31, 1995, the last day of the month for which it had received a premium. At that point, defendant attempted to pay the premium. QualMed deposited the check and immediately refunded it.

Meanwhile, defendant continued to deduct $48.42 from plaintiff's paychecks.

In September 1995, plaintiff learned that QualMed had canceled defendant's insurance coverage. On September 21, 1995, she submitted her resignation, effective October 6, 1995. On her final day, defendant paid her a final paycheck, but it deducted $48.42 for the medical insurance for her daughter. By that date, defendant had deducted a total of $242.10 from plaintiff's wages for insurance premiums that it never paid to QualMed. When plaintiff questioned defendant about the deductions, defendant replied that it hoped to convince QualMed to reinstate the insurance. A month later, defendant returned the $242.10 to plaintiff.

On March 15, 1996, plaintiff initiated this action for statutory penalties based on defendant's failure to pay her $242.10 in wages when due. The trial court found, among other things, that, at the time plaintiff resigned, defendant knew that QualMed had canceled the insurance policy and had rejected defendant's attempt to reinstate the policy. The court found that, under the circumstances, defendant's failure to pay the $242.10 in unused accumulated deductions for premiums constituted willful failure to pay wages when due and payable. The court further found that plaintiff had not consented to the retention of the sum and that defendant had no reasonable expectation—the court phrased it "at best a long shot"—that QualMed would reinstate the policy. The court awarded plaintiff 30 days' wages plus attorney fees.

■    On appeal, defendant first argues that the trial court erred in awarding the statutory penalty for failing to pay wages when due, because the $242.10 was not "wages" within the meaning of the statute. Defendant argues:

"Though plaintiff was entitled to a refund based upon QualMed's ultimate refusal to accept Body Imaging's payment of the premiums for the health insurance coverage for its employees, which she undeniably received, that event cannot amount to a *post hoc* conversion of those funds into unpaid wages due to plaintiff on her quit date."

Plaintiff argues that the $242.10 represented deductions from her paycheck for insurance premiums that defendant

never paid on a canceled insurance policy. As such, she argues, the sum amounts to wages within the meaning of the statute.

■     At issue is the proper construction of the term "wages" as it is used in ORS 652.140(2), which provides, in part:

> "When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment."

That presents a question of law, which we determine by examining the text of the statute in its context, with reference to legislative history and other aids to construction, if necessary. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 652.140 does not define the term "wages." It commonly means an employer's "pledge or payment * * * for labor or services." *Webster's Third New Int'l Dictionary*, 2568 (unabridged ed 1993). That broad definition is reflected in other related provisions of the employment statutes. ORS 652.210(3), for example, defines wages as "all compensation for performance of service by an employee."

There is no question but that plaintiff earned the disputed $242.10 as compensation for the services that she provided for defendant. Not even defendant disputes that. Defendant argues that the amount nevertheless is not "wages," because plaintiff had no right to expect receipt of the sum after she agreed that it would be deducted to pay health insurance premiums for her daughter. That argument, however, founders on the undisputed fact that defendant never used the deducted money for that purpose and that, by the time plaintiff terminated her employment, QualMed had canceled the policy. Thus, at the time plaintiff gave notice of her resignation, wages were unpaid, and a total of $242.10 remained unpaid until more than a month after the resignation.

■ Defendant insists that, even if the sum constitutes "wages" within the meaning of the statute, the wages were not "due and payable" at the time of plaintiff's termination, because defendant was in the process of attempting—with plaintiff's consent—to obtain reinstatement of the insurance coverage. Defendant ignores the fact that the policy had been canceled and that QualMed already had rejected defendant's attempt to reinstate the policy. It also ignores the trial court's explicit finding that plaintiff did not consent to the retention of her wages.

■ Defendant next argues that the trial court erred in imposing a penalty for willfully failing to pay wages when due and payable, because its failure to pay the $242.10 was not willful. According to defendant, it merely retained the sum in the good faith belief that it could negotiate successfully with QualMed to reinstate the policy. Plaintiff argues that, as used in the employment statutes, "willful" misconduct means no more than intentional conduct and does not necessarily require an absence of good faith.

■ The meaning of the term "willful" as used in the employment statutes presents a question of law. *PGE*, 317 Or at 610. The trial court's finding that defendant's conduct was, in fact, willful is reviewed for any evidence. *Illingworth*, 297 Or at 694. ORS 652.150 provides that any employer who "willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140" is subject to a penalty of up to 30 days' wages. The term "willfully" is not defined by statute. The Supreme Court, however, has construed the term as used in ORS 652.150 to require no showing of bad faith:

> " 'In civil cases the word "willful," as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.' " *Sabin v. Willamette-Western Corp.*, 276 Or 1083, 1093, 557 P2d 1344 (1976) (quoting *State ex rel Nilsen v. Johnston et ux*, 233 Or 103, 108, 377 P2d 331 (1962)).

In this case, there is ample evidence that defendant knew exactly what it was doing in withholding the $242.10 and that it intended to withhold the sum.

■ Defendant argues that, even if there is evidence that it acted intentionally, it cannot be regarded as having acted willfully, because it merely acted pursuant to statute in declining to return the money to plaintiff immediately upon her termination. According to defendant, ORS 652.710 imposes obligations that "create[ ] an unworkable conflict" with ORS 652.140. Defendant, however, never explains the precise nature of that "unworkable conflict." ORS 652.710 provides, in part:

> "(1) All moneys collected by an employer from employees or retained from their wages for the purpose of providing for or furnishing to such employees medical and surgical attention, hospital care, X-rays, ambulance, nursing or any related service or care contingent upon sickness or injury pursuant to a contract are trust funds and shall be placed and kept in separate accounts by the employer and shall promptly be paid over to the contractor. Such funds shall in no event become a part of the assets of the employer.
>
> "* * * * *
>
> "(3) On and after July 1, 1992, when an employer that is a group health insurance policyholder * * * receives notice that the group health insurance policy is terminated by the insurer and the employer does not replace coverage with any other group health insurance policy, the employer shall notify all employees who were covered under the terminated group policy."

Thus, the statute prohibits commingling of wage deductions for health insurance benefits, and it imposes an obligation to inform employees of the termination of their group health insurance coverage. Nothing in that statute conflicts with the obligations of an employer to pay wages due and payable as provided in ORS 652.140. We therefore conclude that the trial court did not err in finding that defendant acted willfully or in imposing a penalty on defendant pursuant to ORS 652.150.

■ ■ Defendant's final argument is that the trial court erred in awarding attorney fees under ORS 652.200(2). That statute provides, in part:

> "*In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours * * * after the same became due and payable*, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action[.]" (Emphasis added.)

We have said that the withheld insurance premiums were wages to which plaintiff was entitled pursuant to ORS 652.140. It is undisputed that defendant did not refund plaintiff's insurance premiums within a period of 48 hours after they became due under ORS 652.140. Accordingly, the trial court determined that this case satisfies the provisions of ORS 652.200(2), and that plaintiff is entitled to attorney fees. Defendant disputes that conclusion. It notes that the statute provides for an award of attorney fees only in an "action for the *collection* of wages." Because plaintiff's wages were paid before the initiation of this action, defendant asserts that this is not a *collection* action. Under defendant's interpretation of the statute, it is not enough that the wages remained unpaid for a period of 48 hours after they were due. The wages must still be unpaid at the time the action is commenced. Plaintiff appears to agree with that much, but contends that the provision is satisfied, because the penalty imposed by ORS 652.150 is itself a wage and employer had not paid that penalty by the time she initiated this action.

■ We first address the parties' concerns with regard to the meaning of the term "wages" as used in the Wage Claim Act, in order to determine whether this is an action for the collection of wages. To determine the proper construction of the statutes, we begin with their texts, giving the textual terms their ordinary meanings, unless the statutes or their contexts make clear that a different meaning was intended. *PGE*, 317 Or at 610. The term "wages" is not defined in the statutes specifically for the purpose of the Wage Claim Act.

That term is commonly understood to encompass compensation for labor or services. *Webster's Third New Int'l Dictionary*, 2568.[1]

■ Furthermore, although the text of ORS 652.200(2) does not specifically state it, ORS 652.150 makes it clear that the term "wages" is also intended to encompass the penalty wage provided by ORS 652.150. As a penalty for the nonpayment of wages,

> "the *wages or compensation of such employee shall continue* from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date; and provided further, the employer may avoid liability for the penalty by showing financial inability to pay the wages or compensation at the time they accrue." ORS 652.150. (Emphasis added.)

The penalty for nonpayment of wages is a *continuation of the wages*; thus, although the wages that continue are not "earned" in the sense commonly understood, they are, nonetheless, wages. Accordingly, read together, as it must be, with ORS 652.150, ORS 652.200(2) must be understood to encompass an action for the collection of the penalty wage.

Any other conclusion would create an irreconcilable tension with the statutes providing for enforcement of the wage laws. For the purpose of the enforcement of wage claims by the Commissioner of the Bureau of Labor and Industries

---

[1] Consistent with that common meaning and with the remedial purpose of the legislation, the Oregon Supreme Court has construed the term "wages" as it is used in ORS 652.200(2) to encompass not only hourly wages, but any type of compensation for an employee's labor or services. In *Hekker v. Sabre Construction Co.*, 265 Or 552, 510 P2d 347 (1973), the court noted that, in common usage, the term can be taken to refer narrowly to payment for "stated, relatively brief, intervals of labor." *Id.* at 559. Or it can be taken to refer more broadly to mean "various forms of payment for services rendered." *Id.* at 559-60. The court held that, in light of the remedial purposes of the term, it should be given the broader definition, that is, to encompass not just an hourly rate of payment but also other forms of payment for services such as a commission on gross sales. *Id.* We similarly held in *Kantor v. Boise Cascade Corp.*, 75 Or App 698, 709, 708 P2d 356 (1985), that, as used in ORS 652.200(2), the term "wages" refers to "any *compensation* for an employe[e]'s services." (Emphasis added.) In that case, we held more specifically that "wages" included pension benefits that were earned and unpaid. All forms of compensation for services are to be treated as wages.

(BOLI), a "wage claim" is expressly defined to include any wages, compensation, damages or "civil penalties provided by law to employees in connection with a claim for unpaid wages." ORS 652.320(9). Thus, if BOLI took an assignment of plaintiff's wage claim, then it would encompass her claim for the penalty wage. Necessarily, the definition of "wage claim" for the purpose of assignment to BOLI may encompass only those rights that an employee has to assign. The parties do not dispute that a private wage claim may be brought under ORS 652.140 *et seq.* for the collection of the penalty wage only, even if the earned wage itself has been paid. We see no reason why, in its attempt to ameliorate the disparate economic bargaining strengths of employers and employees, the legislature would limit the availability of attorney fees to cases where the earned wage remains unpaid at the commencement of the action, thereby diminishing the disincentive to delay the payment of wages.

The dissent believes that our conclusion runs afoul of the limitation in ORS 652.200(2) that attorney fees are available only when the wages are not paid for a period of 48 hours "after the same became due." ORS 652.150 contains no express due date for the penalty wage. The dissent reasons that because ORS 652.150 provides that an employer may avoid liability for the penalty upon a showing of financial inability to pay it, the penalty is not *due* until it is determined to be owing by the court. The dissent's concern is grounded in its assumption that, when a plaintiff files a claim to force payment of the penalty wages, the employer must have failed timely to pay those particular wages. There is no basis in the statute for that assumption. An employee's "wage claim" encompasses wages for services performed as well as continuing wages owed as a penalty. When the employer fails to pay earned wages within 48 hours of when they are due under ORS 652.140, the predicate for the attorney fee provision is satisfied. The fact that the employer later pays the earned wages, but not the penalty wage, is not significant. The employee may still bring a wage claim, because the wage obligation has not been satisfied in full. If the employer fails to pay earned wages within 48 hours after they became due, then the attorney fee entitlement in ORS 652.200(2) is triggered. Stated another way, an employee has a single wage

claim, not two. The fact that an employer pays a portion of the owed wages does not somehow fracture the claim into discrete claims. For that reason, we do not need to decide here when penalty wages become due and payable.

Any other conclusion would undermine the provisions of ORS 652.160. It provides:

> "In case of a dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim."

The point of that statute is to ensure that when an employer disputes some of the wages claimed by an employee, the employer remains obligated to pay the undisputed portion on time, and the employee remains free to accept the employer's partial payment without waiving any remedies as to the balance. Here one of the remedies that plaintiff was entitled to as to the balance was attorney fees under ORS 652.200(2), because the balance was not paid within 48 hours of when it was due under ORS 652.140. If an employee's acceptance of *timely* payment of a portion of the wages owed would not be a waiver of remedies as to the unpaid balance, then surely acceptance of *untimely* payment of the balance is not a waiver either. Yet, that is the upshot of the dissent's approach. To be able to invoke the full range of remedies available on the balance, plaintiff would have had to refuse the late payment of the disputed earned wages. She then could have filed a wage claim for both the untimely tendered portion of earned wages and the penalty wages. It is only in that circumstance that the dissent apparently would conclude that she could invoke the attorney fee provision and avoid a waiver. That is flatly contrary to the policy reflected in ORS 652.160.

In sum, we conclude that an "action for collection of wages" encompasses an action seeking only wages owed as a penalty under ORS 652.150 and that an employee is entitled to attorney fees under ORS 652.200(2) when there is a failure to pay the earned wages more than 48 hours after they are due and payable. The fact that the employer later tenders those wages and the employee later accepts them does not

waive the employee's right to reasonable attorney fees if the employee files and prevails on an action to collect any portion of the wage claim. The trial court's determination that plaintiff is entitled to attorney fees for prevailing on her claim for the penalty wage is correct.[2]

Affirmed.

**LANDAU, J.,** concurring in part; dissenting in part.

I agree with the majority's disposition of defendant's first two assignments of error. Where I part company with

---

[2] We note, on a more global level, that in at least two cases we have read the statute to encompass not merely actions for the *collection* of wages, but actions brought to enforce the Wage Claim Act generally. In *Kling v. Exxon Corp.*, 74 Or App 399, 703 P2d 1021 (1985), the plaintiff was terminated from his employment on May 5, but was not paid his last wage until May 13. All earned wages had been paid by the time the action was commenced. We affirmed the trial court's judgment awarding the plaintiff a penalty wage under ORS 652.150 and attorney fees under ORS 652.200(2), rejecting the employer's equal protection challenge to the statute, and adopting instead the reasoning of the trial court that without the attorney fee provision, few attorneys would be motivated to pursue employees' wage claims on a contingency fee basis, in view of the relatively small amount of most such claims. 74 Or App at 404.

Again, in *Pope v. Judicial Dept.*, 79 Or App 732, 721 P2d 462 (1986), we affirmed an attorney fee award on a wage claim when the wage itself had been paid before the action was commenced. The employer State of Oregon did not pay the plaintiff her accrued vacation pay until 19 days after she voluntarily quit her employment. The plaintiff brought an action under ORS 652.150 for the recovery of penalty wage and attorney fees. Although the precise question here concerning the availability of attorney fees was not an issue in that case, we affirmed the trial court's award of attorney fees. In discussing whether the wage claim statutes should be construed to apply to the state as an employer, we quoted the Supreme Court's description of the central purpose of the wage claim statute, to assure that

"one who works in a master and servant relationship usually with a disparity of economic power existing between himself and his superior, shall be assured of prompt payment for his labors when the relationship is terminated. *Lamy v. Jack Jarvis & Company, Inc.*, [281 Or 307, 313, 574 P2d 1107 (1978)]." 79 Or App at 737.

Further, we said,

"[t]he wage collection statutes were intended 'to discourage an employer from using a position of economic superiority as a lever to dissuade an employee from promptly collecting his agreed compensation.' *State ex rel Nilsen v. Ore. Motor Ass'n*, [248 Or 133, 138, 432 P2d 512 (1967)]." *Id.*

Thus, in two of our prior cases, we have treated an action for the enforcement of the penalty wage provisions as an "action for the collection of wages" under ORS 652.200, even though the actual earned wages had been paid before the action was commenced. Both the language of ORS 652.150 and the remedial purpose of the legislation support that interpretation.

the majority is in its conclusion that a statutory penalty is a "wage" within the meaning of ORS 652.200(2), so that an "action for the collection of wages" can include an action for the collection of a statutory penalty alone. In my view, that construction cannot be squared with the ordinary meaning of the term "wages." Nor can it be squared with the statutory context in which the term is used. I therefore respectfully dissent from the affirmance of the award of attorney fees.

The language that is in dispute is as follows:

> "In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours * * * after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action[.]"

ORS 652.200(2). The question is whether her successful action to collect the statutory penalty satisfies the statutory prerequisites for obtaining attorney fees. I conclude that it does not. In brief, a penalty is not a "wage," certainly not a wage that became due and payable at any identifiable period of time before imposition by a court of law. As a result, plaintiff's action cannot properly be characterized as an action for the collection of "wages" that were not paid for a period of 48 hours.

I begin with the meaning of the term "wage." In construing the meaning of the term we must apply its ordinary meaning unless there is clear evidence in the statute that the legislature meant something else. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) ("words of common usage typically should be given their plain, natural and ordinary meaning"); *Welliver Welding Works v. Farmen*, 133 Or App 203, 208, 890 P2d 429 (1995) (courts must give statutory terms their ordinary meaning "unless there is a clear indication that some other meaning was intended"); *SAIF v. Meredith*, 104 Or App 570, 574, 802 P2d 95 (1990) ("in the absence of a clear legislative intent to the contrary, the court is bound to give to the words of a statute their natural and ordinary meaning").

The natural and ordinary meaning of the term "wages" is undisputed. The majority concedes that the term ordinarily means "pledge or payment * * * for labor or services." *Webster's Third New Int'l Dictionary*, 2568 (unabridged ed 1993). In fact, that is precisely how the Supreme Court and we have defined the term as it is used in ORS 652.200(2). In *Hekker v. Sabre Construction Co.*, 265 Or 552, 559-60, 510 P2d 347 (1973), the Supreme Court held that, as used in ORS 652.200(2), "wages" means compensation for services, including compensation in the form of commissions. Likewise, in *Kantor v. Boise Cascade Corp.*, 75 Or App 698, 709, 708 P2d 356 (1985), *rev den* 300 Or 506 (1986), we construed the term as used in the same statute to mean "any compensation for an employe[e]'s services."

That is also how the legislature has defined the term "wages" elsewhere in the employment statutes. ORS 652.210(3), for example, defines "wages" as "all compensation for performance of service by an employee[.]" Indeed, everywhere the term is expressly defined in the Oregon Revised Statutes, it means compensation for services rendered. *See, e.g.,* ORS 267.380(1)(c) (" '[w]ages' means remuneration for services performed by an employee for the employer"); ORS 292.014(2) (" '[s]alaries and wages' means payments to officers and employees of a state agency for services rendered"); ORS 316.162(3) (" '[w]ages' means remuneration for services performed by an employee for an employer"); ORS 652.190 (" 'wages' means compensation of employees based on time worked or output of production and includes every form of remuneration payable for a given period to an individual for personal services"); ORS 653.010(11) (" '[w]ages' means compensation due to an employee by reason of employment"); ORS 656.005(29) (" '[w]ages' means the money rate at which the service rendered is recompensed"); ORS 657.105(1) (" 'wages' means all remuneration for employment"). In each case, the legislature has used the term in its natural, ordinary sense of compensation for services rendered.

By no stretch of the imagination is a statutory penalty a "wage" in the ordinary sense. An employee does not earn an employer's penalty. It is not payment for any labor or

service that the employee has rendered. It is instead a consequence of an employer's failure to comply with a legal obligation. Its purpose is punishment of the employer, not compensation of the employee. *See Nordling v. Johnston*, 205 Or 315, 323-26, 283 P2d 994, 287 P2d 420 (1955) (purpose of ORS 652.150, providing penalty for failing timely to pay "wages" is punitive, not compensatory). Thus, when plaintiff brought this action for recovery solely of a statutory penalty, she did not bring an action for the collection of "wages." She brought an action for the collection of a penalty. There is no statutory provision for an award of attorney fees in an action for the collection of a penalty.

What is more, ORS 652.200(2) makes clear that attorney fees may be recovered only if the employer fails to pay wages more than 48 hours after they became "due and payable." No statute requires that the penalty created by ORS 652.150 must be paid on any particular date. Apparently that is because the legislature intended the statutory penalty created by ORS 652.150 not to become due and payable until imposed by a court. The statute expressly provides that an employer "may avoid liability for the penalty by showing financial inability to pay the wages or compensation at the time they accrued." Thus, failure to pay a wage does not, by itself, secure entitlement to a penalty. The court must determine the extent to which a plaintiff is entitled to it first. That being the case, an employee cannot collect attorney fees for "untimely" payment of a penalty before it has been determined that the penalty, in fact, is due at all.

The majority nevertheless insists that plaintiff did initiate this action for the collection of "wages." It does so, however, by imbuing the term with a meaning that is contrary to common usage, contrary to the manner in which the term is used in the statute at issue, and contrary to the manner in which the term is used in every single other statute in which the word has been defined by the Oregon Legislature.

At the outset, let me make clear that I do not contend that the legislature lacks the *authority* to define terms as it pleases. The legislature may expressly define "wages" to mean anything within its constitutional authority. But if it

has not done so, I think that—out of respect for the legislature and the language that it chose to enact—we should be wary of imposing a highly unusual construction merely because we speculate that is what the legislature might have intended but did not actually say. That is why we are required to apply ordinary meaning unless it is *clear* that the legislature intended a contrary meaning. *Welliver Welding Works*, 133 Or App at 208; *Meredith*, 104 Or App at 574.

The majority finds such clarity in ORS 652.150, which defines the penalty itself as a continuation of wages. According to the majority, if the penalty is defined as a continuation of wages, then it follows that the penalty *is* a wage. 163 Or App at 534. The statute does, indeed, say that if an employer fails to pay a wage when due, then "the wages or compensation shall continue" for up to 30 days. The question is whether, in so doing, the legislature intended for us to understand that the meaning of the term "wage" itself implicitly was redefined to mean penalties, or instead that the continuation of the wages provides the means of calculating the total penalty that the employer may be assessed. In my view, only the latter makes sense.

If the majority is correct that the penalty itself is a "wage," then, according to the terms of a statute, every day that the penalty is not paid, the employer may become liable for up to an additional 30 days of wages as a penalty. With each day the employer fails to pay the penalty—because it is a "wage"—the employer becomes liable for up to 30 days additional wages as a further penalty. And with each day that the employer fails to pay that penalty, the employer becomes liable for up to 30 days of additional wages, *ad infinitum*. The 30-day limit on the accumulated penalties thus becomes entirely illusory, contrary to the express language of the statute. The majority fails to explain how its construction can avoid leading to that obviously unintended conundrum.

Moreover, the majority's construction cannot be reconciled with ORS 652.200(2), which provides that the action for the collection of wages must involve wages that were not paid more than 48 hours after they became due and payable. As I have noted, no statute specifies a due date for the statutory penalty provided for in ORS 652.150. If anything, it is

not due until imposed by the court. Thus, even if in the abstract the term "wage" reasonably could be construed to include penalties, it could not within the meaning of ORS 652.200(2).

The majority responds that there is no basis for my "assumption" that the employer must have failed to timely pay the wages that are the subject of the collection action. 163 Or App at 535. I assume nothing, however. I simply read the statute, which says that there must be an "action for the collection of wages, if it is shown that *the wages* were not paid for a period of 48 hours" after they became due and payable. ORS 652.200(2) (emphasis added).

The majority rejoins that, although an action for the collection of "wages" refers to the collection of penalties, the immediately following reference to "the wages" actually means not penalties but the *earned* wages that originally were unpaid when due and payable. That reading is grammatically untenable. *See, e.g., Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931 P2d 763 (1997) (the definite article "the" functions as an adjective to denote a particular, specified thing, not a general, unspecified class of things); *Osborn v. PSRB*, 325 Or 135, 143 n 7, 934 P2d 391 (1997) (drawing distinction between use of definite and indefinite articles). It also requires that we read the same term "wages" to mean two different things in the same sentence, something that we generally regard as highly unlikely. *See, e.g., PGE*, 317 Or at 611 ("use of the same term throughout a statute indicates that the term has the same meaning throughout the statute"); *State v. Allison*, 143 Or App 241, 255, 923 P2d 1224 (1996) (rejecting suggestion that statutory term means two different things in same sentence); *State v. Jones*, 109 Or App 235, 238 n 3, 818 P2d 1286 (1991) ("Presumably, the legislature intended the phrase to carry the same meaning every time it used it in the same sentence.").

The majority also claims support for its construction from the definition of "wage claims" that may be brought by the Bureau of Labor and Industries, which claims may include requests for "wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages." ORS 652.320(9). According to the

majority, because a wage *claim* may include a demand for civil penalties, a "wage" must include civil penalties. The argument cannot be squared with the language of the very statute on which the majority relies. To begin with, the statute itself makes clear that the civil penalty is not itself a "wage," for it refers to the penalty separately from the term "wage." Furthermore, the statute specifies that the penalty may be recovered only to the extent that the law provides for recovery of a penalty *"in connection with* a claim for unpaid wages." ORS 652.320(9) (emphasis added). The fact that the law provides for the recovery of a penalty "in connection" with a wage claim does not mean that the penalty is itself a "wage." The majority's argument is simply illogical.

The majority finally claims support, if cautiously, from two prior decisions in which we affirmed on other grounds an award of attorney fees under ORS 652.200(2) in cases in which the underlying claim apparently was for civil penalties only. The majority is right to be cautious. In both *Kling v. Exxon Corp.*, 74 Or App 399, 703 P2d 1021 (1985), and *Pope v. Judicial Dept.*, 79 Or App 732, 721 P2d 462 (1986), the issue before us in this case was neither briefed nor argued, much less addressed by this court. I would not depart from the plain meaning of a statutory term on the basis of decisions of this court that did not even address the meaning of the statutory terms involved.

In short, the meaning of the term "wages" is not at all unclear. It has a natural, ordinary meaning, one that the legislature consistently has used throughout the Oregon Revised Statutes. That meaning should be used in the construction of ORS 652.200(2) unless there is clear evidence in the text of the statute and its context that the legislature intended some other meaning. There is no such clear evidence in the statute or elsewhere. An action for the "collection of wages" cannot reasonably be construed to mean an action for the collection of statutory penalties, and the majority errs in concluding otherwise.

Deits, C. J., and Brewer, J., join in this dissent.