Argued and submitted May 6, affirmed November 5, 2008

# Janice K. TERWAY,
*Petitioner,*

*v.*

# REAL ESTATE AGENCY,
*Respondent.*

Real Estate Agency
200312R322; A132368

196 P3d 1022

Kevin Crawford argued the cause for petitioner. With him on the brief was The Law Office of Kevin Crawford, P.C.

Michael C. Livingston, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner, a licensed real estate salesperson, seeks judicial review of a final order of the Real Estate Commissioner (the commissioner) reprimanding her for violating ORS 696.301(1) and ORS 696.805(2)(c) during her representation of a seller in a real estate transaction.[1] The commissioner concluded that two separate violations occurred when petitioner, as the selling agent, failed to disclose to the buyers that the property was in a 100-year flood plain. The commissioner further concluded that either violation supported the imposition of the sanction. We review the commissioner's findings of fact for substantial evidence and his legal conclusions for errors of law and for substantial reason. *See* ORS 183.482(8)(a), (c). We affirm.

The commissioner adopted the administrative law judge's (ALJ's) findings of fact for purposes of his rulings. Petitioner does not dispute those findings. Accordingly, the following findings are the facts for purposes of our judicial review. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995).

"1.  [Petitioner] Janice K. Terway has been licensed by the Real Estate Agency as a Salesperson since December 1996. In July 2002, she was licensed as a Temporary Associate Broker.

"2.  On or about March 17, 2003, in anticipation of listing property for sale, [petitioner] obtained a package of documents, known as a 'trio,' from First American Title (FATCO). The report on the real property located * * * in Dallas, Oregon, included a Real Property Assessment Report from the Polk County Assessors' Office. The County Assessor's report provided a summary of the property's value, including the AV (assessed value: $114,610) and RMV (real market value: $134,720), a description of the land, including zoning (RS-Residential Site) and lot size (11,269 square feet), a breakdown of the improvements on the land, including a description of the structure (one story) and its total square footage (1,366). In the section labeled 'Exemptions/Special Assessments/Potential Liability,' the

---

[1] All statutory citations are to the 2003 versions of these statutes. The 2005 legislature subsequently amended ORS 696.301. Or Laws 2005, ch 393, § 3.

Assessor's Report contained the following notation: 'DESCRIPTION 100 YEAR FLOOD PLAIN.'

"3.   [Petitioner] also received a Statement of Tax Account on the subject property as well as a 'Metroscan Property Profile' on the land and property characteristics. The preliminary title report did not list any reference to a flood plain.

"4.   On March 21, 2003, [petitioner] entered into a listing agreement with the property's owner, Wayne Fleming. Mr. Fleming inherited the property from his mother and never lived in the house. In connection with listing the property [petitioner] completed an 'MLS' (multi-listing service) report describing the property and home. [Petitioner] used certain information from the 'trio' documents in completing the MLS report, including the square footage of the house, the year built, and the lot size. [Petitioner] did not indicate on the MLS report that the county records listed the property in the 100 year flood plain.

"5.   In connection with listing the property for sale, Mr. Fleming completed a Seller's Disclosure Disclaimer Exemption, certifying that the transaction was not subject to the requirements of ORS 105.465 to 105.490 (the Seller's Property Disclosure Statement) because he had never occupied any part of the real property. Mr. Fleming represented that he had no knowledge of any material defects in the real property except those set out in writing.

"6.   Thomas and Rita Padden hoped to relocate to the Dallas area after selling their home in Redmond, Oregon. In late March or early April 2003, they looked at the subject property with their agent, Pam Fields. They liked the house, and its proximity to the park and Rickreall Creek. The Paddens offered to purchase the property on April 9, 2003. The seller counter-offered and, on April 11, 2003, the Paddens and Mr. Fleming entered into a Real Estate Sale Agreement.

"7.   At some point before the closing, Mrs. Padden asked Pam Fields whether the subject property was located in a flood zone. Ms. Fields responded either, 'I don't think so' or 'I don't know.'

"8.   In May 2003, the Paddens contracted with Swift Residential Real Estate Appraisal to have the subject property appraised. Appraiser Brian Beebe did an appraisal of

the single family residence located at the subject property. The Paddens paid for the appraisal. The lender, Certified Financial, required it. In an addendum to the May 6, 2003, appraisal, the appraiser noted: 'The subject [property] appears to be located in Flood Zone AE ([b]ase flood elevations determined).' The appraiser obtained the flood information from consulting a map published by the Federal Emergency Management Administration (FEMA).

"9. The Paddens reviewed the Appraisal, including the Addendum, prior to closing. They did not know, however, what the term 'Flood Zone AE' meant. Thomas Padden 'did not worry about it.' The Paddens did not ask Ms. Fields about the flood zone notation in the appraisal.

"10. [Petitioner] did not receive a copy of the Appraisal, and did not know that the appraiser described the property as being located in Flood Zone AE. The Paddens did not contact [petitioner] with any inquiry related to the flood plain. They never had any direct contact with [petitioner] in the transaction.

"11. The sale of the subject property closed on or about June 5, 2003. The Paddens signed many documents in connection with the closing, including the Buyer's Estimated Settlement Statement, a Flood Insurance Authorization and an Insurance Authorization. The Paddens were required to sign the Flood Insurance Authorization form per the lender's instructions.

"12. The Paddens were charged $10 by Certified Financial Services for the Flood Insurance Certification. In the Authorization, the Paddens authorized the Lender to purchase flood insurance during the life of the loan secured by the subject property. The Authorization states, in pertinent part: 'This authorization is extended only in the case where a determination is made subsequent to closing that flood insurance is necessary, because the Lender has determined the improved real property or mobile home and personal property securing the loan is located both in a Special Flood Hazard Area (SFHA) as determined by the Director of the Federal Emergency Management Agency (FEMA), and in a community participating in the National Flood Insurance Program (NFIP).' The Authorization also contains a Certification for the seller to sign, certifying that the

property is not, to the best of the seller's knowledge, contained in a flood area. The Certification was not signed by the seller in this instance.

"13.  [Petitioner] did not disclose the 'trio' information to the Paddens or the Paddens' agent, Pam Fields.

"14.  The Paddens moved into the subject property on or about June 11, 2003. In August 2003, they were contacted by the lender and advised that they needed to obtain flood insurance on the property. Mrs. Padden contacted Wall Insurance Agency in Dallas, Oregon, and was told that, unless some modifications were made to the property, flood insurance would cost them between $1,400 and $2,000 annually. The Paddens had the property surveyed, and then had the house 'vented.' This significantly reduced the flood insurance premium. The modifications cost the Paddens approximately $1,400. Currently, they pay $291 a year for flood insurance on the property.

"15.  FEMA is the federal agency charged with mapping flood hazard zones. In implementing the National Flood Insurance Program, FEMA created approximately 12 different 'flood hazard zone designation.' These are flood insurance rate zones that correspond to certain areas within and around the 100 year flood plains. Some zones require mandatory flood insurance purchases, and others do not. 'Zone AE' is a flood insurance rate zone within the 100 year flood plains in which mandatory flood insurance purchase requirements apply."

(Citations and footnote omitted.)

Based on the above facts, the commissioner determined that petitioner violated ORS 696.301(1), "because she knowingly or negligently failed to disclose the flood plain information in her possession to the buyers or their agent, which was a material fact, which created a reasonable probability of damage or injury[.]" Also, the commissioner concluded that petitioner violated ORS 696.805(2)(c), because "she failed to disclose the flood plain information to the buyers or their agent, which was a material fact known to the [petitioner] and not readily apparent or ascertainable to a party."

ORS 696.301 provided that the commissioner

"may suspend or revoke the real estate license of any real estate licensee, reprimand any licensee or deny the issuance or renewal of a license to an applicant who has done any of the following:

"(1) Knowingly or negligently pursued a continued course of material misrepresentation in matters related to professional real estate activity, whether or not damage or injury resulted, or knowingly or negligently made any material misrepresentation or false promise in a matter related to professional real estate activity, if the material misrepresentation or material false promise created a reasonable probability of damage or injury, whether or not damage or injury actually resulted.

"* * * * *

"(33) Failed to comply with ORS 696.805, 696.810, 696.815, 696.820, 696.845 or 696.870."

ORS 696.805(2), in turn, provided, in part:

"A seller's agent owes the seller, other principals and the principals' agents involved in a real estate transaction the following affirmative duties:

"* * * * *

"(c) To disclose material facts known by the seller's agent and not apparent or readily ascertainable to a party."

After the commissioner notified petitioner of his intent to reprimand her under the above statutes, she requested a hearing, and the commissioner referred the matter to an ALJ. After hearing the matter, the ALJ issued a proposed order that, after setting forth findings of fact, concluded that petitioner had not violated her statutory duties imposed by the above statutes. The ALJ reasoned that "the same flood plain information known by [petitioner] was easily accessible and readily ascertainable to the Paddens and their agent[,]" and he proposed that the commissioner dismiss the complaint against petitioner.

Although the commissioner adopted the ALJ's findings of fact, he ultimately rejected the ALJ's proposed conclusions of law, reasoning that the fact that the residence was in

a flood plain was not apparent and that information regarding that fact was not readily ascertainable:

> "The only remaining question is whether the information is 'apparent or readily ascertainable to a party.' [Petitioner] argues the information was readily ascertainable to the buyer as it showed up on the appraisal in some form.

> "The ALJ's analysis of these terms is incorrect.

> "The record shows that whether a property is in a flood plain is based upon FEMA maps. The record also shows that, although part of a property is designated in a 100-year flood plain, it does not necessarily mean any structures are located in the flood plain, because flood plain locations are determined by base flood elevations.

> "Therefore, a party would have to locate a FEMA map, know what designation 'AE' means and know the elevation and location of a structure, relative to the base flood elevation, to determine if the structure was in the flood plain. This information is not readily ascertainable to a party.

> "To find this information 'readily ascertainable' would presume an average person would know what a FEMA map was and where to find one, and how to apply the information in reading it. I conclude that, although such information may be public information, it is not 'readily ascertainable.'

> "There is no evidence in the record stating there was any visible damage to the property due to flooding, or that there was any signage or similar evidence at the property that would cause a person to question if the property was in the flood plain. Therefore, the probability the property was in a flood plain was not apparent.

> "The [petitioner's] argument also presumes in every instance that there will be a lender and there will be an appraiser. There is no evidence in the record supporting a finding that such is true in every case. Additionally, the argument seems to presume the buyer will see the appraisal in every case. The record shows that the buyer has a right to the appraisal but does not state that in every instance the buyer will see the appraisal.

"A licensee cannot wait for an appraisal to reveal the information if she has the information. She must *affirmatively* disclose the information when she obtains it, and certainly no later than at such time as a contract to purchase is entered into. Because she was not charged with failure to affirmatively disclose this information to *her* principal, the seller, I mention only for educational purposes that she also had that duty when she received the information.

"The [petitioner] asked for the information contained in the trio. She had an obligation to review it when she received it.

"* * * * *

"Therefore, I find the sanction of a reprimand appropriate under these circumstances."

(Emphasis in original.)

On review, petitioner makes three arguments:

"A. The Agency has incorrectly applied ORS 696.301(1) and ORS 696.805(2)(c) as a matter of law, and as such, the [a]gency [f]inal [o]rder must be overturned. The [petitioner] cannot be disciplined for misrepresentation by omission if there is no duty owed as circumscribed by ORS 696.805(2)(c).

"B. The Agency erred in changing a [h]istorical [f]act [d]etermined by the [a]dministrative [l]aw [j]udge. The [f]inding of the [a]dministrative [l]aw [j]udge was [c]orrect [b]ased upon the [p]reponderance of [e]vidence [c]ontained in the [r]ecord.

"C. The Agency's [f]inal [o]rder is [n]ot [s]upported by the [e]vidence as a [w]hole and [i]s [v]oid of [s]ubstantive [r]easoning."

Initially, we observe that the terms of ORS 696.301(1) and ORS 696.805(2)(c) provide discrete grounds for the discipline of a real estate licensee. ORS 696.301(1) applies to licensees acting in any capacity "in matters related to professional real estate activity[,]" and, for a violation to occur, the material misrepresentation must result in a reasonable probability of damage or injury. In contrast, ORS 686.805(2)(c) applies only to licensees acting as the seller's

agent and requires disclosure of material facts unless those facts are "apparent or readily ascertainable."

■     Because it is undisputed that petitioner was acting as the agent of the seller, we turn first to the language of ORS 686.805(2)(c) and petitioner's argument that she did not violate that statute. Petitioner asserts initially that she had no duty under the statute to disclose the flood plain information because the information was contained in a public record in the county assessor's office and therefore was "apparent" or "readily ascertainable" to the Paddens. Petitioner's argument depends on whether the commissioner correctly interpreted those words in the statute and therefore requires us to consider the proper standard of judicial review that is applicable to his interpretation.

■     In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223-28, 621 P2d 547 (1980), the Supreme Court explained that courts, in the exercise of their judicial review function of administrative decisions, have different roles and responsibilities depending on the nature of the statutory language in dispute. Specifically, the *Springfield* court identified three categories of statutory language subject to agency application, each requiring a different level of appellate court deference. The first category consists of "exact terms," which require no interpretation because they impart precise meanings. *Id.* at 224. The second category consists of "inexact terms," which embody a complete expression of legislative meaning but are subject to varying interpretations, and the task of the agency and of a reviewing court is to determine what the legislature intended by the use of those words. *Id.* The third category consists of "delegative terms," which express "non-completed" legislation in that the agency is given authority to refine and execute the generally expressed legislative policy. *Id.* at 228. The delegation of responsibility for policy refinement under a statute that contains delegative terms is for the agency and not part of the review function of the court. Rather, the role of a reviewing court is to ascertain whether the agency's decision is within the range of discretion allowed by the more general policy of the statute. *See* ORS 183.482(8)(b)(A); *Springfield*, 290 Or at 229.

We conclude that the words "apparent" and "readily ascertainable" in ORS 686.805(2)(c) are inexact terms because they constitute an expression of a completed policy judgment by the legislature. *See, e.g., Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000) (holding that the words in ORS 696.511(1) that require a person to obtain a license if the person "act[s] in the capacity of an escrow agent" are inexact terms because they embody a complete expression of legislative intention). Indeed, the words "apparent" and "readily ascertainable" establish boundaries that define a legislatively created exception to a licensee's duty to disclose known material facts, and the legislature has not left it to the commissioner to either expand or narrow those boundaries. *See, e.g., J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197-98, 131 P3d 162 (2006) (holding that the words in ORS 632.940 that the department may collect fees "reasonably necessary to cover the cost of inspection and administration" are inexact terms because they restrict the authority of the agency to establish fees "that bear a defined relationship with the likely range of costs for the program").

■ Because the words "apparent" and "readily ascertainable" are inexact terms, our review of the commissioner's interpretation is for errors of law and requires us to discern the policy underlying the use of those words. In other words, "[w]hether certain facts are within the [legislature's] intended meaning depends upon the policy that inheres in the term by its use in a statute which is intended to accomplish certain legislative purposes." *Springfield*, 290 Or at 225. Thus, when applying terms of completed legislative expression, the agency determines initially, and this court reviews to decide, whether the agency's decision

> "is within the legislative policy * * *. In some cases, legislative history will reveal that certain situations were expressly considered and intended to be included or excluded. More often, however, the test is general: whether a particular interpretation or application is consistent with or tends to advance a more generally expressed legislative policy."

*Id.* at 226.

To determine whether the commissioner's interpretation is consistent with the legislature's policy underlying the statute, we first examine the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In analyzing the text and context of the words "apparent" and "readily ascertainable[,]" we are mindful that words of common usage should be given their plain and ordinary meaning. *Id.* at 611. If the legislature's intent is clear from an examination of the text and context of ORS 696.805(2)(c), our inquiry is at an end. *Coast Security Mortgage Corp.*, 331 Or at 354-55. The dictionary defines "apparent" as

"**1** : capable of easy perception: as **a** : readily perceptible to the senses, esp. sight : open to ready observation or full view : unobstructed and unconcealed[.]"

*Webster's Third New Int'l Dictionary* 102 (unabridged ed 2002). The word "readily" is defined as meaning

"**a** : with prompt willingness : without hesitation, quibbling, or delaying : with alacrity : WILLINGLY * * * **b** : with fairly quick efficiency : without needless loss of time : reasonably fast : SPEEDILY * * * **c** : with a fair degree of ease : without much difficulty : with facility : EASILY."

*Webster's* at 1889. Finally, the word "ascertain" is defined as meaning

"**2** : to find out or learn for a certainty (as by examination or investigation) : make sure of : DISCOVER ‹a sensitive instrument for *-ing* the people's ideas and wishes—A.R. Williams› ‹had *-ed* . . . that his son-in-law was among the living prisoners—Charles Dickens› **syn** see DISCOVER."

*Webster's* at 126.

We conclude that, when the foregoing definitions are considered along with the remainder of the language in ORS 696.805(2)(c) and the circumstances of this case, the commissioner's decision is within the policy parameters established by the legislature. The duty to disclose material facts under ORS 696.805(2) is one of a number of affirmative duties imposed by the legislature on selling agents in ORS 696.805. The legislature's policy underlying the statute is evident from its language and its context—to ensure that real estate

buyers have available to them all material information necessary to make an informed decision to purchase. That policy is effectuated by requiring disclosure by the seller's agent of all known material information to the prospective buyer. The exception to the duty placed on the seller's agent by the legislature is applicable only when the information is capable of being easily perceived through the physical senses of the buyer or when it can be easily discovered by the buyer.

Here, the commissioner made the proper inquiries required by the terms of the statute. He examined the record to determine if the fact that the property was in a flood plain was apparent, and he analyzed the question of whether the information that it was in a flood plain could be easily discovered. Those inquiries carried out the legislature's policy that real estate buyers have available the information known by the seller's agent that would be necessary to making an informed decision to purchase. Consequently, we conclude that the commissioner did not err as a matter of law in his interpretation of the terms "apparent" and "readily ascertainable" in the statute.

■   Next, we turn to petitioner's arguments that the commissioner erred in changing the ALJ's finding of historical fact that the flood plain information was "readily ascertainable" contrary to ORS 183.650(3) and that the order is not supported by substantial evidence or substantial reasoning.[2] We are not persuaded that the commissioner's decision runs afoul of ORS 183.650(3). That statute refers to "a finding of historical fact." The commissioner's ruling about whether the flood plain information was apparent or readily ascertainable is not a finding from the evidence of historical fact that is established by the preponderance of the evidence within the contemplation of the statute. Rather, the ruling constitutes a legal conclusion derived from the application of the statutory language to the commissioner's findings of historical fact.

---

[2] ORS 183.650(3) provides, in part, that

"[a]n agency conducting a contested case hearing may modify a finding of a historical fact made by the administrative law judge * * * only if the agency determines that the finding of historical fact made by the administrative law judge is not supported by a preponderance of the evidence in the record."

" 'Substantial evidence' exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.484(5)(c). Petitioner argues that the commissioner's findings are not supported by substantial evidence because the flood plain information was a matter of public record. But the legislature did not create an exception based on whether the undisclosed information was a matter of public record. Petitioner's argument, if accepted, would substitute a different standard for the one enacted by the legislature.

Moreover, there is substantial evidence to support the commissioner's findings. Petitioner was aware that the Polk County Assessor's Report contained the notation "DESCRIPTION 100 YEAR FLOOD PLAIN" but did not disclose that fact to the Paddens.[3] As to the information that was in the appraisal report procured by the Paddens, he found that

"although part of a property is designated in a 100-year flood plain, it does not necessarily mean any structures are located in the flood plain, because flood plain locations are determined by base flood elevations.

"Therefore, a party would have to locate a FEMA map, know what designation 'AE' means and know the elevation and location of a structure, relative to the base flood elevation to determine if the structure was in the flood plain."

He concluded that, "although such information may be public information, it is not readily ascertainable." The commissioner also found that there was no "visible damage to the property due to flooding," no "signage or similar evidence * * * that would cause a person to question if the property was in the flood plain." The above findings are all supported

---

[3] In her closing argument to the commissioner, petitioner relied on testimony of her expert witnesses and argued that "the tax records are most often wrong." It followed, in her view, that she had no obligation under the statute to disclose the contents of the assessor's report to the Paddens. However, the commissioner rejected the testimony of petitioner's experts who had testified to that fact, finding that they were interested in the outcome of the proceeding because they were the principal brokers of the firm where petitioner was employed and that "they spoke in broad sweeping terms without any specific evidence to support their remarks." The commissioner's ultimate conclusion that petitioner's expert testimony should be accorded "little weight" is a conclusion that a reasonable factfinder could reach, based on the evidence before the commissioner.

by evidence in the record or are based on reasonable inferences that could be drawn from the evidence in the record.

■ ■ Finally, petitioner argues that the commissioner's order is not supported by substantial reason. The requirement that agency decisions be supported by substantial reason is designed to facilitate "meaningful judicial scrutiny of the activities of an administrative agency." *Home Plate Inc. v. OLCC*, 20 Or App 188, 190, 530 P2d 862 (1975). Agencies are required to demonstrate in their opinions the reasoning that leads the agency to the conclusions that it draws from the facts. *Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996). Here, the commissioner articulated a rational connection between the facts and the conclusions that he drew from those facts. Although, had we been the agency, we might not have reached the same conclusion, the commissioner's conclusions are conclusions that a reasonable decision-maker could reach in light of the underlying findings.

In sum, we reject petitioner's arguments under ORS 696.805(2)(c) for the above reasons. Because the commissioner expressly determined that he would have imposed the same sanction for each violation, we need not consider petitioner's arguments regarding the commissioner's ruling under ORS 696.301(1).

Affirmed.