**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIAS BOBADILLA-GERMAN; JACOBO
BOBADILLA-GERMAN; VICENTE
FIMBRES ROMERO; MAURO GERMAN-
SANCHEZ; GILBERTO PADILLA-ORTIZ;
VICTOR VILLANUEVA-HERNANDEZ;
DARIO ANGEL VILLEGAS-MEZA,
           *Plaintiffs-Appellants,*

           and

JOSE DE JESUS GAETA BAUTISTA;
BENJAMIN URBALEJO-RODRIGUEZ,
           *Plaintiffs,*

           v.

BEAR CREEK ORCHARDS, INC., a
Delaware corporation,
           *Defendant-Appellee.*

No. 10-35205

D.C. No.
1:07-cv-03058-PA

ELIAS BOBADILLA-GERMAN; JACOBO
BOBADILLA-GERMAN; VICENTE
FIMBRES ROMERO; MAURO GERMAN-
SANCHEZ; GILBERTO PADILLA-ORTIZ;
VICTOR VILLANUEVA-HERNANDEZ;
DARIO ANGEL VILLEGAS-MEZA,
           *Plaintiffs-Appellees,*

           v.

BEAR CREEK ORCHARDS, INC., a
Delaware corporation,
           *Defendant-Appellant.*

No. 10-35268

D.C. No.
1:07-cv-03058-PA

OPINION

4985

Appeals from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

Argued and Submitted
March 11, 2011—Portland, Oregon

Filed April 12, 2011

Before: Sidney R. Thomas and Susan P. Graber,
Circuit Judges, and James V. Selna,* District Judge.*

Opinion by Judge Thomas

*The Honorable James V. Selna, District Judge for the U.S. Central
District of California, Santa Ana, sitting by designation.

---

**COUNSEL**

Mark J. Wilk, Oregon Law Center, Woodburn, Oregon, for the plaintiffs-appellants/cross-appellees.

Brenda K. Baumgart, Barran Liebman LLP, Portland, Oregon, for the defendant-appellee/cross-appellant.

Denise G. Fjordbeck, Assistant Attorney General, Appellate Division, Office of the Oregon Attorney General, Salem, Oregon, for the amicus curiae.

---

**OPINION**

THOMAS, Circuit Judge:

In these appeals, we consider whether certain on-site housing costs of seasonal farm workers can be credited toward the minimum wage set by Oregon statute. Under the circumstances presented by this case, we conclude that they may not. We also conclude that the workers in this case were entitled to be paid on the last workday, rather than the following day.

I

Bear Creek Orchards, Inc., operates peach and pear orchards in Medford, Oregon. It hires seasonal workers to pick the orchards over the course of a month-long harvest. Bear Creek typically hires about 50 workers to pick peaches and 300 to pick pears.

In recent years, at least three-fourths of Bear Creek's seasonal workers have been recruited from the San Luis, Arizona, area. Once recruited, these workers traveled from their permanent homes in Arizona to Oregon for the month-long harvest.

As part of their compensation, workers were offered optional on-site housing and meals. Bear Creek charged between five and seven dollars a day for housing and deducted this amount from the workers' paychecks and credited it toward their minimum wage. The company, though, deducted housing costs from a worker's paycheck only if he or she completed a deduction-authorization form. In many instances, if housing costs were not credited toward the workers' minimum wage, their wage would have been below the lawful minimum wage.

During the 2004-2006 harvests, workers were generally given their final paychecks on the morning after their last day of work.

II

Several workers filed a class-action lawsuit against Bear Creek. The class, represented by 12 named plaintiffs, alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1872, as well as Oregon's minimum wage laws.[1] Several plaintiffs, suing individually,

---

[1]The district court exercised supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

also claimed that Bear Creek violated Oregon law by failing to pay their wages when due after their employment ended. The district court held a bench trial and issued its Findings of Fact and Conclusions of Law.

The district court ruled in favor of the workers on some claims and in favor of Bear Creek on others. The workers appeal only one claim. They argue that Bear Creek violated Oregon's minimum wage laws by crediting on-site housing costs toward the workers' minimum wage. The district court disagreed, concluding that Bear Creek lawfully credited the costs because on-site housing was optional and was provided for the workers' private benefit. The workers argue on appeal that the district court misapplied Oregon state law in reaching this conclusion.

Bear Creek cross-appeals on a different claim. The district court concluded that Bear Creek violated Oregon law by paying its workers the day after their last workday. Under Oregon law, the court concluded, employers must pay seasonal farm workers on the last workday. The district court awarded the individual plaintiffs one day's pay as damages. Bear Creek argues on appeal that the district court misapplied Oregon state law in reaching this conclusion.

The district court had jurisdiction over the workers' federal claims under 29 U.S.C. § 1854. It had supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. We have jurisdiction over the appeals under 28 U.S.C. § 1291.

III

Following a bench trial, we "review[ ] the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Bell*, 602 F.3d 1074, 1079 (9th Cir. 2010) (citing *Crockett & Myers, Ltd v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232, 1236 (9th Cir. 2009)), *cert. denied*, 131 S. Ct. 653 (2010).

The district court erred when it concluded that Bear Creek lawfully credited on-site housing costs toward the workers' minimum wage. The district court properly concluded that Bear Creek violated Oregon law by paying its workers the day after their last workday.

## A

**[1]** Oregon law allows employers to deduct from a worker's minimum wage the "fair market value of lodging, meals or other facilities or services furnished by the employer for the *private benefit* of the employee." Or. Rev. Stat. § 653.035(1) (emphasis added). "Private benefit" is defined in Oregon's Administrative Rules:

> Lodging or other facilities or services are furnished for the private benefit of the employee when such lodging or other facilities or services are not required by the employer. For purposes of this rule, lodging or other facilities or services are required by the employer when:
>
> (a) Acceptance of the lodging or other facilities is a condition of the employee's employment; or
>
> (b) The expense is incurred by an employee who must travel away from the employee's home on the employer's business; or
>
> (c) The acceptance of the lodging or other facilities or services is involuntary or coerced; or
>
> (d) The provision of lodging or other facilities or services is necessary in order for the employer to maintain an adequate work force at the times and locations the employer needs them.

Or. Admin. R. 839-020-0025(7).

The district court concluded that none of the four subsections applied and, as a result, the on-site housing was provided to the workers for their private benefit and could be credited toward their minimum wage. In particular, it concluded subsection (b) did not apply because the workers were not "traveling salesmen temporarily away from home on their employer's business." And it concluded subsection (d) did not apply because it applies only to "situations where an 'on call' employee must reside at employer-furnished housing." We hold that subsection (d) applies here; we therefore need not address the district court's determination with respect to subsection (b).

**[2]** As the workers and the State of Oregon (as amicus) argue on appeal, subsection (d) applies here because Bear Creek would not have been able to maintain its workforce in the absence of on-site housing. The district court concluded subsection (d) applies only to on-call workers (e.g., hotel attendants), but the court did not provide any justification for why subsection (d) should be read more narrowly than its plain text. Under the plain text of subsection (d), a court must simply ask the question—Without the furnished housing, would the employer be able "to maintain an adequate work force at the times and locations the employer needs them"? Or. Admin. R. 839-020-0025(7)(d).

**[3]** The district court found that Bear Creek's on-site housing "facilitate[s] recruitment of migrant harvest workers" and that "Bear Creek . . . benefits in a variety of ways by offering employee housing." But, more than that, the record establishes that Bear Creek would not be able to "maintain an adequate work force at the times and locations [Bear Creek needed] them." Or. Admin. R. 839-020-0025(7)(d). Indeed, nearly all of the workers lived in the on-site housing.

Bear Creek's recruiter for 2006, Gumercindo Iboa, stated that Bear Creek would not be able to acquire the requisite labor force if it did not offer housing:

Q: So it's the inability to fulfill all the labor needs here that causes Bear Creek to recruit elsewhere?

A: Yes.

Q: Does having labor housing available to workers help in the recruitment of out of town workers?

A: Absolutely.

Q: How does it help?

A: We are able to hire from outside and be able to, and, or capable of housing these people in order for us to get the fruit off the trees.

Q: If you didn't have the housing, could you get the labor?

A: No.

Q: Why is that?

A: No housing available for them.

Q: No housing available for them in Medford?

A: Uh-huh. Yes.

Q: So in terms of housing workers, the choice that workers face comes down to having housing at Bear Creek or there is no housing?

A: I agree, uh-huh.

And Benny Suarez, Jr., the supervisor in charge of Bear Creek's farm labor camps remarked, "[T]he majority of the [workers] . . . would say if it wasn't for housing, they

wouldn't come back." According to a residential landlord in the Medford area, who owns approximately 100 residential units, the rental and hotel market in Medford would probably not accommodate the 350 or so workers.

In addition to allowing Bear Creek to marshal enough employees, on-site housing ensures that workers will be ready to pick peaches or pears in the morning. As Suarez testified at trial, "It's a benefit for the employer to have them ready to go to work." In his deposition, he explained:

> Q: What did you understand to be the benefit that Bear Creek Orchards receives from having workers live in the camp?
>
> A: Ah, they are ready when, for work in the mornings, they are ready to go to work.
>
> Q: How does this differ from anybody who lives off orchard who lives in town or in the area?
>
> A: Well, for sure we know where they are there and we pick them up in the buses and we can count that their [sic] is no room for their vehicles to break and not being there to go to work.

At trial, when asked, "Does the company need to have the workers in the company housing in order to get the fruit picked?" Suarez answered, "It's to—yes." Similarly, Iboa testified at trial that on-site housing "cuts us back on absentee-ism, tardiness and, you know, the workers are available to us." In his deposition, Iboa stated: "[W]e don't have [a] problem with attendance because they're always there. . . . I think that's the main thing, I mean, they're always available to us when work is available."

**[4]** The record, then, shows that on-site housing was "necessary in order for [Bear Creek] to maintain an adequate work

force at the times and locations [Bear Creek needed] them." Or. Admin. R. 839-020-0025(7)(d).

Bear Creek, though, maintains the district court correctly concluded that subsection (d) applies only to on-call workers and not to its seasonal farmworkers. In support of its argument, Bear Creek cites three administrative decisions where the Oregon Bureau of Labor and Industries ("the Bureau") applied subsection (d) to on-call-type employees: *In re Elisha, Inc.*, No. 24-02, 25 BOLI 125 (2003); *In re Jewel Schmidt*, No. 08-97, 15 BOLI 236 (1997); *In re Rainbow Auto Parts & Dismantlers*, No. 24-91, 10 BOLI 66 (1991). But these decisions do not stand for the proposition that subsection (d) applies *only* to on-call employees. As the State argued in its amicus brief, "While the rule is applicable to 'on call' employees, as the district court found, it is also applicable in other instances, such as the present case, in which the employer provides lodging because it is otherwise unable to meet its need for workers."

Bear Creek also argues that we should look to federal labor law to determine the meaning of Oregon's purportedly analogous state laws. Bear Creek maintains that Oregon's "private benefit" standard is substantially the same as the Fair Labor Standards Act's ("FLSA") "primarily for the benefit or convenience of the employer" standard. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.3(d).[2] This argument fails for two reasons.

First, the wording of the two standards is facially different. Under Oregon's "private benefit" standard, the focus of the inquiry is the employee's benefit. Or. Rev. Stat. § 653.035; Or. Admin. R. 839-020-0025. A court must determine whether housing was provided as a "private benefit" to the

---

[2]29 C.F.R. § 531.3(d) states that "[t]he cost of furnishing 'facilities' found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages."

employee. *Id.* Under the FLSA, however, the focus is on the employer's benefit. 29 C.F.R. § 531.3(d)(1); *Soler v. G. & U., Inc.*, 833 F.2d 1104, 1109-10 (2d Cir. 1987). A court would have to determine whether housing was provided "primarily for the benefit or convenience of the employer." *Id.* These are different inquiries.

Second, Oregon has adopted a rule—Oregon Administrative Rule 839-020-0025(7)—specifically defining when housing is conferred as a "private benefit." We need not examine federal labor law, as Bear Creek would have us do, in order to give meaning to the term "private benefit." Oregon's administrative rules have done that already.

**[5]** The district court erred in its application of Oregon's minimum wage laws. Accordingly, we reverse its decision as to this issue and hold that Bear Creek violated Oregon law when it credited on-site housing costs toward its employees' minimum wage.

### B

Bear Creek, on cross-appeal, challenges the district court's conclusion that it paid some of its workers a day later than it should have. We affirm the district court's decision on this issue.

**[6]** Under Oregon Revised Statutes § 652.145:

> [I]f an employee has worked for an employer as a seasonal farmworker, *whenever the employment terminates, all wages earned and unpaid become due and payable immediately*. However, if the employee quits without giving the employer at least 48 hours' notice, wages earned and unpaid are due and payable within 48 hours after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs.

Or. Rev. Stat. § 652.145 (emphasis added).[3] The administrative rule implementing this statute provides:

> (1) When a seasonal farmworker or seasonal reforestation worker terminates employment because of discharge or mutual consent, all wages earned and unpaid become due and payable *on the last day the employee works*.

> (2) When a seasonal farmworker or seasonal reforestation worker quits employment and gives the employer at least 48 hours notice of intent to quit, all wages earned and unpaid become due and payable *on the last day the employee works*.

> (3) When a seasonal farmworker or seasonal reforestation worker quits employment and fails to give the employer at least 48 hours notice, all wages earned and unpaid become due and payable *within 48 hours after the employee quits or on the next regularly scheduled payday, whichever comes first*.

Or. Admin. R. 839-001-0440 (emphasis added). In other words, unless the worker quits and fails to give at least 48 hours' notice, the phrase "whenever the employment terminates," Oregon Revised Statutes § 652.145, is taken to mean "on the last day the employee works," Oregon Administrative Rule 839-001-0440.

The district court concluded Bear Creek violated this rule because the company terminated and paid its workers the day after their last workday. The district court noted that payment on the last workday might be "burdensome and costly to accomplish, but it is possible."

---

[3]The parties do not dispute that the plaintiffs were "seasonal farm-workers" within the meaning of Oregon Revised Statutes § 652.145.

Bear Creek acknowledges that it paid its workers one day after their last workday. But it claims that the district court erred by applying the rule because the Bureau of Labor and Industries exceeded its authority when it promulgated Oregon Administrative Rule 839-001-0440(1). Bear Creek argues that the rule's requirement that wages be paid "on the last day the employee works" is patently inconsistent with the statutory requirement that wages be paid "whenever the employment terminates." Bear Creek's argument is unpersuasive.

With Oregon Administrative Rule 839-001-0440(1), the Bureau made clear that it interpreted the phrase "whenever the employment terminates" to mean "on the last day the employee works." Generally speaking, Oregon courts defer to agency rules. *Terway v. Real Estate Agency*, 196 P.3d 1022, 1027 (Or. Ct. App. 2008). The level of deference, though, depends on the "nature of the statutory language in dispute." *Id.* The Oregon Supreme Court has identified three categories of statutory text, each requiring a different level of appellate court deference:

> The first category consists of "exact terms," which require no interpretation because they impart precise meanings. The second category consists of "inexact terms," which embody a complete expression of legislative meaning but are subject to varying interpretations, and the task of the agency and of a reviewing court is to determine what the legislature intended by the use of those words. The third category consists of "delegative terms," which express "non-completed" legislation in that the agency is given authority to refine and execute the generally-expressed legislative policy. The delegation of responsibility for policy refinement under a statute that contains delegative terms is for the agency and not part of the review function of the court. Rather, the role of a reviewing court is to ascertain whether the agency's decision is within the range of discre-

tion allowed by the more general policy of the stat-
ute.

*Id.* at 1027 (citations omitted) (discussing and citing *Spring-
field Educ. Ass'n v. Springfield Sch. Dist. No. 19*, 621 P.2d
547, 552-55 (Or. 1980).

Here, the statutory term "whenever the employment termi-
nates" is not an exact term—i.e., it does not have a facially
precise meaning. *See id.* Instead, it is either an inexact or dele-
gative term. *See id.* Courts afford agencies less deference in
their interpretation of inexact terms than delegative terms. *See
id.* When an agency interprets an inexact term, the agency
interpretation is reviewed "for errors of law and requires [the
court] to discern the policy underlying the use of those
words." *Id.* at 1028. The "court reviews to decide, whether the
agency's decision is within the legislative policy." *Id.* (inter-
nal quotation marks omitted).

**[7]** Oregon courts have addressed the purpose of similar
wage and hour statutes on several occasions. *See, e.g.*, *Bel-
knap v. U.S. Bank Nat'l Ass'n*, 234 P.3d 1041 (Or. Ct. App.
2010); *Wyatt v. Body Imaging, P.C.*, 989 P.2d 36 (Or. Ct.
App. 1999) (en banc); *Pope v. Judicial Dep't*, 721 P.2d 462
(Or. Ct. App. 1986); *Lamy v. Jack Jarvis & Co.*, 574 P.2d
1107 (Or. 1978). They have observed, for instance:

> [T]he "central purpose [of the wage and hour statutes
> is] that of assuring that one who works in a master
> and servant relationship, usually with a disparity of
> economic power existing between himself and his
> superior, shall be assured of prompt payment for his
> labors when the relationship is terminated."

*Belknap*, 234 P.3d at 1048 (quoting *Lamy*, 574 P.2d at 1111).
Similarly, Oregon courts have concluded that the policy of the
statutes is "to aid an employee in the prompt collection of
compensation due and to discourage an employer from using

its economic superiority as a lever to dissuade an employee from promptly collecting his agreed compensation." *Stout v. Citicorp Indus. Credit, Inc.*, 796 P.2d 373, 375 (Or. Ct. App. 1990) (citing *State ex rel. Nilsen v. Or. State Motor Ass'n*, 432 P.2d 512, 515 (Or. 1967)).

**[8]** Here, the Bureau's rule requiring employers to pay seasonal farmworkers "on the last day the employee works," Oregon Administrative Rule 839-001-0440(1), advances the policy of ensuring "prompt payment for [the seasonal farmworkers'] labors when the relationship is terminated." *Belknap*, 234 P.3d at 1048. Thus, the Bureau's interpretation of Oregon Revised Statutes § 652.145—which takes the statutory phrase "whenever the employment terminates" to mean "on the last day the employe works"—is a valid interpretation of an inexact term (as well as a delegative term, under the less stringent standard).

Bear Creek quibbles with the practical implications of the rule, but, as the district court stated, "The wisdom of the regulation is a judgment to be made by Oregon's Legislature and the Commissioner of [the Bureau]," not a reviewing court.

**[9]** We affirm the district court's conclusion that Bear Creek violated Oregon Administrative Rule 839-001-0440(1) when it paid some of its workers the day after their last workday.

IV

For the reasons above, we reverse the district court's determination that Bear Creek lawfully credited on-site housing costs toward its workers' minimum wage. We affirm its determination that Bear Creek violated Oregon law by paying some of its workers the day after their last workday. We need not and do not reach any other issues urged by the parties.

**AFFIRMED in part; REVERSED in part; costs on appeal awarded to Plaintiffs-Appellants/Cross-Appellees.**