EGAN, C. J., dissenting.
Under the majority's reading of Powers v. Quigley , 345 Or. 432, 198 P.3d 919 (2008), a statute only conflicts with, and is therefore an exception to, ORCP 54 E, if the statute provides for an alternate, nearly identical procedure to facilitate settlement. The majority arrives at its conclusion purporting to apply the analysis set out by the Powers court: when "two statutes are inconsistent," such that it is *668 not possible to give effect to both, "the more specific statute will control over the more general one." Mathis v. St. Helen's Auto Center, Inc. , 298 Or. App. 647, 653, 447 P.3d at 493 (2019). Rather than focusing on whether we can give full effect to both ORS 652.200(2) and ORCP 54 E, however, the majority engages in a detailed comparison of ORS 652.200(2) to ORS 20.080 and ORS 742.061 -the two other statutes which have previously been construed as exceptions to ORCP 54 E. That comparison leads the majority to focus solely on whether, in enacting ORS 652.200(2), the legislature intended a replacement "settlement window" to apply rather than the window in ORCP 54 E. In focusing only on the legislative purpose of encouraging settlement, the majority ignores the other important legislative purposes behind ORS 652.200(2). In my view, pursuant to the Powers analysis, applying ORCP 54 E to limit an attorney fee award under ORS 652.200(2) would controvert the latter statute's core purpose of encouraging employers to pay employees promptly without the necessity of litigation. Therefore, I would hold that ORS 652.200(2) is an exception to ORCP 54 E.
I begin with the majority's read of Powers and the Oregon Supreme Court's holding that ORS 20.080 is an exception to ORCP 54 E. This is necessary before getting to the statute at issue in this case, because Powers built a framework to determine when a particular attorney fee statute might be exempt from application of ORCP 54 E. The majority begins with the correct explanation of the Powers exception: The court instructed that "when the specific statute providing for attorney fees is in direct conflict with ORCP 54 E, such that applying ORCP 54 E would defeat the statute's core purpose," ORCP 54 E does not apply. Mathis , 298 Or. App. at 654, 447 P.3d 494. The majority proceeds, however, to skirt over what the court identified as the "core purpose" of ORS 20.080. The majority identifies the "core purpose" as "to encourage prelitigation settlement of meritorious small tort claims." Mathis , 298 Or. App. at 656, 447 P.3d at 495. But the Powers court identified a different core purpose: "to prevent tortfeasors and their insurers *502 from refusing to pay just claims." 345 Or. at 440-41, 198 P.3d 919.
Certainly, the majority is correct that encouraging prelitigation settlement was a statutory purpose that the *669 Powers court identified in determining whether it could give full effect to ORCP 54 E and ORS 20.080. But to the majority, promotion of settlement was the end goal of the statute, achieved by "distributing the risk of paying the plaintiff's attorney fees in a purposeful way: the defendant bears the risk if the defendant receives written notice of a valid claim and chooses not to pay it before an action is filed, while the plaintiff bears the risk if the plaintiff inflates the claim and chooses to file an action rather than accepting a valid offer." Mathis , 298 Or. App. at 656, 447 P.3d at 495. Thus, the majority summarily concludes that, with ORS 20.080, the legislature merely intended to replace the "settlement window" of ORCP 54 E with a different "window."
The majority's portrayal of the policy behind ORS 20.080 implies that the court construed it as an exception to ORCP 54 E only because the legislature wanted to nudge tortfeasors and insurance companies to settle justified claims before litigation. In reality, however, the legislature's policy was more complex than a gentle nudge to settle. By allowing successful plaintiffs to recover attorney fees, the legislature incentivized insurers and tortfeasors to respond to meritorious claims before litigation. Indeed, the Powers court recognized that tortfeasors and insurers frequently rejected plaintiffs' claims, "knowing that the claimant would often consider it impractical to bring an action if he had to pay his own attorney's fees." 345 Or. at 439, 198 P.3d 919 (quoting Bivvins v. Unger , 263 Or. 239, 243, 501 P.2d 1262 (1972) ). ORS 20.080, the court explained, allows plaintiffs to hold tortfeasors liable for their attorney fees in order to "promote settlement in cases where the plaintiff otherwise might not be able to afford an attorney." Id. (quoting Landers v. E. Texas Motor Frt. Lines , 266 Or. 473, 476-77, 513 P.2d 1151 (1973) ).
In my view, Powers acknowledged that ORS 20.080 promoted prelitigation settlement in order to force defendants to acknowledge plaintiffs' claims without plaintiffs having to file suit, or hire an attorney, at all. That goal was achieved by forcing defendants to either "evaluate" the plaintiff's case and choose to tender full payment to the plaintiff, or risk having to pay attorney fees should the plaintiff hire an attorney, take the case to trial, and prove that any tender *670 (or lack thereof) by the defendant was inadequate. Powers , 345 Or. at 441, 198 P.3d 919. ORCP 54 E conflicted with ORS 20.080, because a defendant could use ORCP 54 E to limit its liability for a plaintiff's attorney fees. Limiting an award under the statute would undermine the statute's core purpose; it would allow defendants to ignore and undervalue plaintiffs' claims, knowing that they could later offer a reasonable settlement amount and avoid attorneys fees going forward should plaintiffs manage to take them to trial.
Additionally, the majority misses that the Powers court took into account the fact that the attorney fee provision in ORS 20.080 served to balance the frequent economic disparity between plaintiffs and defendants in small claims actions. Without ORS 20.080, defendants could lowball or completely ignore plaintiffs' claims, knowing that there would be little likelihood that plaintiffs would find it practical or possible to hire an attorney and file suit. By enacting ORS 20.080, the legislature prevented defendants from utilizing their superior economic position by holding defendants who ignore or fail to pay valid claims liable for plaintiffs' attorney fees. The majority is correct that the attorney fee provision in ORS 20.080 was "a means to an end;" that end, however, was simply more than encouraging prelitigation settlement. Therefore, I disagree with the majority's apparent conclusion that, to be an exception to ORCP 54 E, a statute must provide a "settlement window" akin to ORCP 54 E. In my view, the focus should remain on whether application of ORCP 54 E defeats a statute's "core purpose."
The majority's reading of Powers informs how it proceeds to analyze ORS 652.200(2), the attorney fee provision at issue in this case. Immediately after setting out the text of the statute, rather than engaging in an *503 analysis of what the "core purpose" of ORS 652.200(2) is, and whether that purpose is undermined by the application of ORCP 54 E, the majority dissects ORS 652.200(2) in search of every characteristic that distinguishes it from ORS 20.080 and ORS 742.051 (the statute at issue in Wilson v. Tri-Met , 234 Or. App. 615, 228 P.3d 1225, rev. den. , 348 Or. 669, 237 P.3d 824 (2010) - the only other case in which we have construed a Powers exception to ORCP 54 E). Of course, it is helpful to analogize *671 the statute at issue in this case to the statutes that have previously been construed as exceptions. However, in dedicating its energies to matching the statutes up, the majority fails to grapple with the legislative intent of ORS 652.200(2) and whether that intent is undermined by the application of ORCP 54 E. Moreover, in pointing out every distinguishing factor of ORS 652.200(2), the majority ignores the fact that it is also similar to ORS 20.080 and ORS 742.051 in several important ways. See Hekker v. Sabre Construction Co. , 265 Or. 552, 559, 510 P.2d 347 (1973) (noting that ORS 652.200(2) "is based on similar policy considerations" to ORS 20.080 and "its language should be construed in the same spirit").
ORS 652.200(2) entitles a successful plaintiff on a wage claim to "a reasonable sum for attorney fees." Mathis , 298 Or. App. at 659, 447 P.3d 496. The policy behind that entitlement is "to aid an employe[e] in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employe[e] from promptly collecting his agreed compensation." State ex rel. Nilsen v. Ore. Motor Ass'n , 248 Or. 133, 138, 432 P.2d 512 (1967). By enacting ORS 652.200(2), the legislature intended to "encourage employers to pay owed wages without the necessity of litigation." Belknap v. U. S. Bank National Association , 235 Or. App. 658, 672, 234 P.3d 1041 (2009), rev. den. , 349 Or. 654, 249 P.3d 542 (2011).
ORS 652.200(2) plays an important role in effectuating the central purpose of the wage and hour statutory scheme as a whole, which is, namely, "assuring that one who works in a master and servant relationship, usually with a disparity of economic power existing between himself and his superior, shall be assured of prompt payment for his labors when the relationship is terminated." Lamy v. Jack Jarvis & Company, Inc. , 281 Or. 307, 313, 574 P.2d 1107 (1978). In general, the wage and hour statutes "place the burden on the employer to pay the wages, not on the employee to ask for them." Wales v. Walt Stallcup Enterprises , 167 Or. App. 212, 215, 2 P.3d 944 (2000) ; see also ORS 653.045(1)(b) (employers must make and keep available records of "actual hours worked each week and each pay period by each employee"). Indeed, employers are statutorily required to furnish wages *672 within specific timelines. See, e.g. , ORS 652.140 (upon terminating an employee, an employer must pay all wages earned and unpaid "not later than the end of the first business day after the discharge or termination"). In the event that an employer fails to meet a statutory deadline to furnish wages, the employer is subject to the penalty wage provision in ORS 652.150 : for each day outstanding wages are left unpaid, the employer is liable for penalty wages either until the wages are paid or for a maximum of 30 days.
The wage and hour statutory scheme makes it abundantly clear that the legislature intended to hold employers to a very strict standard when it comes to wages that employees have earned. It is within that context that we should construe the fee provision of ORS 652.200(2). In my view, that statute exists to encourage employers to respond promptly to wage and hour claims, and to incentivize them to tender any outstanding wages in a timely manner without the necessity of litigation. As I explain below, allowing employers to later use ORCP 54 E to cut off liability for attorney fees diminishes that incentive.
I turn now, however, to respond to the four "important differences" the majority finds between ORS 652.200(2) and the statutes at issue in Powers ( ORS 20.080 ) and Wilson ( ORS 742.061 ).
First, the majority claims that the latter two statutes are "beat the offer" statutes akin to ORCP 54 E, and that ORS 652.200(2) is not. It is true that ORS 20.080 provides for *504 attorney fees unless the court finds that the defendant tendered to the plaintiff an amount not less than what they recovered at trial, and ORS 742.071(1) provides for attorney fees unless the plaintiff's recovery does not exceed the amount of any tender made by the insurer during the six months after proof of loss. The majority's claim that these provisions are "structurally similar" to ORCP 54 E, though, is inaccurate. ORCP 54 E limits the amount of an attorney fee award when a party rejects an offer to allow judgment and then "fails to obtain a judgment more favorable than the offer to allow judgment." However, both ORS 20.080 and ORS 742.061 apply even if the defendant takes no action and makes no offer . In other words, they require an attorney fee *673 when the defendant ignores a plaintiff's claim completely. Thus, they are not a substitute for the beat-the-offer mechanism of ORCP 54 E; they encourage settlement in a different way: by allowing for attorney fees when the plaintiff has to take the defendant to court in order to get them to tender payment.
Additionally, the majority concludes that because ORS 652.200(2) contains no "beat the offer" language, it is simply a provision for attorney fees "in a particular type of action." Mathis , 298 Or. App. at 660, 447 P.3d at 497. To be sure, ORS 652.200(2) does not direct the court to "compare" offers by the defendant. However, it would be absurd to assume that a court would not compare an amount of wages tendered by the defendant before the plaintiff filed suit. Indeed, if no outstanding wages were due because the defendant tendered before the plaintiff filed suit, the plaintiff would have no claim to prevail on at trial, and would therefore have no attorney fees to recover.[1]
Next, the majority claims that, unlike the Powers and Wilson statutes and ORCP 54 E, ORS 652.200(2) has no "defined window of time in which a defendant can avoid attorney fee liability (altogether or going forward) by offering to pay the full value of the plaintiff's claim after receiving notice of the claim an investigating it." Mathis , 298 Or. App. at 660, 447 P.3d at 497. The majority concludes that, under ORS 652.200(2), "plaintiff's right to attorney fees attaches automatically 48 hours after wages become due and payable." The majority posits that the 48 hours "is not tethered in any way to the notice requirement and will almost certainly pass long before the employer knows that an employee is asserting a claim." Id. at 661, 447 P.3d at 498.
I disagree with the majority's construction of the notice requirement in ORS 652.200(2). Again, ORS 652.200(2) provides:
*674 "In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages became due and payable, the court shall, upon entering judgment for the plaintiff, include in the judgment, in addition to costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action."
In my view, by the terms of the statute, attorney fee liability does not necessarily attach after the 48hour period. Rather, attorney fee liability attaches when a plaintiff files a claim that an employer failed to tender wages owed and the plaintiff's attorney does not "unreasonably fail" to provide written notice to the employer . In other words, the statute provides that notice is a condition precedent to attorney fee liability unless the plaintiff has a reasonable explanation for failing to provide notice.
The majority acknowledges that the "notice provision" was added in 2001 in order to *505 "provide an opportunity to try to resolve wage claims before an action is filed." Mathis , 298 Or. App. at 663, 447 P.3d at 499. Nevertheless, the majority concludes that "that purpose is unrelated to attorney fee liability ." Id. (emphasis in original). As I read the statute, because attorney fees attach when a plaintiff-after not failing unreasonably to give notice-files suit, the notice provision is very much related to attorney fee liability.
The majority also admits that if the legislature had made the notice provision a 10-day period, that "would have made ORS 652.200(2) much more like ORS 20.080 and ORS 742.061(1)." Mathis , 298 Or. App. at 662, 447 P.3d at 498. However, because the proposed 10-day period "met resistance" in the legislature, the majority proceeds to analyze the statute as if it had no notice requirement. Id. Besides the fact that the statute does contain a notice requirement, the majority also misapprehends much of the "resistance" that opponents expressed.
*675 The notice provision was added to ORS 652.200(2) to put "another step in the process as far as an employer being informed of an action so that he has a chance to respond before the thing gets to court." Tape Recording, House Committee on Business, Labor and Consumer Affairs, House Bill (HB) 2500, Feb. 20, 2001, Tape 31, Side A (statement of Rep. Jeff Kruse). The original proposed version of the bill would have required plaintiffs to wait 10 days after issuing the written notice to file suit, allowing employers to tender payment during that time period and avoid liability for attorney fees. HB 2500 (Jan. 11, 2001). The 10-day period did meet resistance from plaintiffs' lawyers, largely due to the fact that a central tenet of the wage and hour statutes is to allow employees to collect wages in a timely manner. See Testimony, House Committee on Business, Labor and Consumer Affairs, HB 2500, Feb. 20, 2001, Ex. D (statement of SEIU Local 503 representative Rich Peppers) ("HB 2500 has three components that are of concern to our organization, in that they each make it more difficult for an employee who is owed wages to collect on those wages in a timely fashion or at all."). Michael Dale testified on behalf of the Oregon Law Center that, although there was "no opposition to the general idea that there should be a written demand for payment, and an opportunity to pay, prior to filing a lawsuit," there was a concern that 10 days was just too long. Testimony, House Committee on Business, Labor and Consumer Affairs, HB 2500, Feb. 20, 2001, Ex. D (statement of Michael Dale). Dale explained:
"[T]here is a reason that Oregon has long required that employers pay wages within a short period after termination of employment. Workers often may need to leave the area for other work. They may need to receive their last pay in order to meet expenses of travel, or to settle outstanding bills. Workers leaving one job may not yet have another, and need their wages in order to survive."
Id. Dale testified that forcing employees to wait 10 days before taking legal action against the employer would defeat the statutory purpose of requiring employers to timely pay wages owed. He noted that
"unscrupulous employer[s] could ignore a worker's claim for wages until ten days after written notice and then pay the *676 wages, knowing that the likelihood that the worker would be able to sue to collect penalties would be minimal, since attorneys' fees would not be available. Many workers would simply abandon the claim. Although my firm would continue to represent such workers, the resources available for free legal services are very limited, and many workers would fall through the cracks."
Id.
The history is unclear as to why the legislature ultimately went with a requirement that plaintiffs not "unreasonably fail" to give notice before filing rather than a requirement to give notice in some number fewer than ten days. However, since the notice requirement was added, we have applied a fact-intensive analysis to determine whether a failure to provide sufficient notice was unreasonable. See Belknap , 235 Or. App. at 671-72, 234 P.3d 1041. ("concluding that plaintiffs' attorneys' failure to give written notice of the wage claim-including the name of the plaintiff or plaintiffs-was unreasonable").
*506 It logically follows that a fact-intensive analysis is required to determine if the timing of a sufficient notice was reasonable. For example, depending on the circumstances surrounding an employee's termination, the size of the employer, and the content of the notice, the plaintiff's notice may or may not have been "reasonable."[2]
What is clear from the legislative history is that the notice requirement was intended to give employers an opportunity to cure any wage-related deficiencies without litigation. The majority's conclusion that attorney fees are triggered before the notice is given is contrary to that purpose, and it effectively renders the notice required a nullity. If the notice does not have anything to do with attorney fee liability, it serves no purpose and will therefore have no effect on the employer. That the notice must simply be given in a "reasonable" time period, and not within a "defined window of time," does not, in my view, prove that the legislature meant the notice to mean nothing.
The majority's next point is that, by using ORCP 54 E, the Powers and Wilson defendants were given a "second *677 chance" to avoid attorney fees. Indeed, in Powers , the defendant used its "first chance" (before litigation) to offer to tender $3,200 in response to the plaintiff's written demand for $4,271, and later (after litigation was initiated) used ORCP 54 E to offer $3,636. 345 Or. at 434, 198 P.3d 919. And in Wilson , the defendant used its "first chance" (before litigation) to deny the plaintiff's claim altogether, and later used ORCP 54 E (after litigation was initiated) to offer $10,000, inclusive of costs. 234 Or. App. at 617-18, 228 P.3d 1225. In my view, those cases are indistinguishable from defendant's use of ORCP 54 E in this case. Defendant used its "first chance" (before litigation, namely, the two weeks between its receipt of plaintiff's notice and plaintiff filing his claim) to completely ignore plaintiff's claim, and then later used ORCP 54 E (after plaintiff filed suit) to offer $2,000.
As to the majority's final point, I do not dispute that ORS 20.080, ORS 742.061, and ORCP 54 E all-at least in part-encourage settlement. But the majority's assumption that my construction of ORS 652.200(2) would discourage settlement (1) again ignores the role that ORS 652.200(2) 's notice plays, and (2) assumes that plaintiffs with wage and hour claims are motivated to militantly litigate and drive settlement values so high as to be extortionary to employers. First, the notice requirement in ORS 652.200(2) gives employers the opportunity to pay meritorious claims and avoid litigation altogether. Second, the majority's fictional plaintiff is a character with whom many plaintiffs in wage and hour claims would be unfamiliar. The legislature has made clear that the wage and hour statutes are in place to protect employees, because employers are often in a position of "economic superiority." For employers, a few days or weeks of missed or late pay may seem trivial; but for an employee, those wages may be necessary for survival.
In sum, by enacting ORS 652.200(2) and the other wage and hour statutes, the legislature intended to balance employers' economically "superior" position by incentivizing employers to promptly pay all wages due. The majority's interpretation of ORS 652.200(2) as "discouraging" settlement is only true in that it discourages employers from refusing to engage in settlement of meritorious claims until after the employee has reasonably notified the employer *678 about the claim and filed suit. It encourages them to engage in settlement negotiations without a lawsuit.
Under my reading of Powers , to determine whether ORS 652.200(2) is an exception to ORCP 54 E, I would first ask whether ORCP 54 E defeats the "core purpose" of ORS 652.200(2). The "core purpose" of ORS 652.200(2) is to encourage employers to promptly pay owed wages without the necessity of litigation. That purpose is accomplished by allowing plaintiffs who use litigation as a necessary tool to collect wages they are owed-i.e. , those who file suit after giving the employer notice and an opportunity to respond-to recover attorney fees. Allowing employers to use ORCP 54 E to partially cut off that attorney fee award would diminish *507 the legislature's "encouragement" substantially. Therefore, I would hold that ORS 652.200(2) conflicts with ORCP 54 E, and, as the former is more specific, that it functions as an exception to the latter.
In this case, the result of my holding would be that plaintiff is entitled to recover all of the reasonable fees and costs incurred in prosecuting his wage claim. Plaintiff notified the employer of his wage claims-including for unpaid commissions and unpaid penalty wages due to the employer's failure to pay all of his earned wages in the statutory time frame required upon termination-and the arbitrator determined that plaintiff's attorney did not act "unreasonably" in issuing that notice around two weeks before filing the claims. The employer did not respond-with a tender of outstanding wages or any other offer-to the notice before plaintiff filed suit. Ultimately, plaintiff was successful, as the arbitrator concluded that he was owed outstanding wages. Under my interpretation of ORS 652.200(2), the employer would not have been able to use ORCP 54 E to cut off its liability for attorney fees, because it failed to tender the wages before plaintiff filed suit. Therefore, I respectfully dissent with the majority's conclusion as to the attorney's fees and costs, but otherwise concur.
Hadlock, Lagesen, James, Powers, and Mooney, JJ., join in this dissent.

I would also note that, because penalty wages are terminated after a maximum of 30 days, and because employers have a statutory duty to keep records of their employees' hours worked, the employer should be able to calculate the amount of wages they potentially owe a plaintiff, and thus be able to calculate a sufficient amount to tender. A compliant employer would not need additional information from the employee, and a compliant employer could easily identify meritless or inflated claims.

The arbitrator in this case engaged in a fact-specific analysis and determined that the content and timing of the notice were reasonable.